2006 ME 143

**ESTATE OF Timmy L. BARROWS.**

Supreme Judicial Court of Maine.

Argued: Sept. 21, 2006.
Decided: Dec. 19, 2006.

Roger J. Katz, Keith R. Varner (orally), Lipman, Katz & McKee, P.A., Augusta, for appellant.

Michael L. Shehan, Timothy J. Bryant (orally), Jonathan G. Mermin, Preti Flaherty Beliveau Pachios & Haley, L.L.C., Portland, for appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Kelene Barrows appeals from a judgment entered in the Waldo County Probate Court (*Longley, J.*) granting a petition by the personal representative, Tommy Barrows, to enforce a prenuptial agreement between Kelene and the decedent, Timmy L. Barrows, and denying Kelene's petition for an elective share of Timmy's estate as his surviving spouse pursuant to 18–A M.R.S. § 2–201 (2005). Kelene contends that the court erred in interpreting the language of the prenuptial agreement to apply in the event of death, as well as divorce, and to be an effective waiver of her elective share pursuant to 18–A M.R.S. § 2–204 (2005). Because we conclude that the agreement is ambiguous, and that the court should look to extrinsic evidence to help construe the agreement,

we vacate the judgment, and remand for further proceedings.

## I. BACKGROUND

[¶ 2] On September 10, 1997, prior to their marriage on September 12, 1997, Kelene and Timmy signed a prenuptial agreement. The parties stipulate that the agreement was valid when it was signed, neither party was under duress, it was signed voluntarily, without fraud, it was not unconscionable, Timmy fairly disclosed his assets to Kelene, and Kelene waived her opportunity to have independent counsel advise her with respect to the agreement. In May of 2003, Timmy executed a last will and testament. He died in February of 2004.

[¶ 3] The prefatory clauses of the prenuptial agreement relevant to Kelene's petition for an elective share are as follows:

> **WHEREAS**, a marriage between the parties is intended following signature of this Agreement and the parties desire to fix and determine by this Agreement their mutual property rights and obligations during the marriage, in the event of their divorce, *or upon the death of either of them.*
>
> . . . .
>
> **NOW, THEREFORE**, in consideration of the intended marriage and of the covenants and agreements herein contained, the parties, intending and agreeing that this Agreement shall be binding upon and inure to the benefit of themselves, their respective legal representatives, *heirs* and assigns, do hereby agree as follows:

(Emphasis added.)

[¶ 4] The first provision of the agreement, defining the rights and obligations of the parties [1] provides:

---

1. The agreement contains a second reciprocal enumerated section with nearly identical lan-

**1. ESTATE OF MR. BARROWS.**

(1) The following properties belonging to Mr. Barrows before the marriage, shall be and remain his separate non-marital property, including without limitation any increase in value of such properties after the date of the marriage:

    A. Any and all interest including but not limited to his stock in Bob Barrows, Inc. [an automobile dealership.]

    B. His interest in the land and buildings located in August[a], Kennebec County, State of Maine ... and acquired jointly with his brother, Tommy L. Barrows on or about June 6, 1987.

    C. His IRA account located at Gardiner Savings Institution ....

In addition, all property acquired by Mr. Barrows subsequent to the marriage, including but not limited to, property acquired by gift, bequest, devise, or descent, all property acquired in exchange for property acquired by gift, bequest, devise, or descent, and all property acquired by Mr. Barrows after an agreement of legal separation, including without limitation, any increase in value of such property, shall be and remain his personal estate and constitute non-marital property pursuant to 19 M.R.S.A. Section 722–A.

[¶ 5] Affidavit A[2] applies to, and was signed by, Kelene, and provides in part:

    2. Prior to the execution of said Agreement, I have waived the right to have an attorney explain to me the rights of a husband to the property of his wife and the rights of a wife to the property of her husband, during marriage, in the event of a divorce, and after death, and to have an attorney explain to me the effect of the attached Agreement on all of those rights.

[¶ 6] Affidavit B, signed by Timmy's attorney who drafted the agreement, provides in part:

    2. Prior to the execution of the attached Prenuptial Agreement, I explained to Mr. Barrows, who signed the same, the rights of a husband to the property of his wife and the rights of a wife to the property of her husband, during marriage, in the event of divorce, and after death, and I also explained the effect of the attached Agreement on all those rights.

[¶ 7] In May of 2004, Kelene petitioned the Kennebec County Probate Court for formal adjudication of intestacy and appointment of herself as personal representative, as Timmy's spouse, for formal adjudication of intestacy only. Tommy then filed a petition for formal probate of the will and for appointment of himself as personal representative, as the individual named in Timmy's will. Kelene agreed to consent to admission of the will and to the appointment of Tommy as personal representative, provided that the administration was supervised.

[¶ 8] Kelene filed a petition for elective share, indicating that the values of the probate and augmented estates were unknown. The court ordered formal, supervised probate, appointing Tommy as the personal representative. Tommy, in his capacity as the personal representative, then filed an objection to Kelene's petition for elective share, contending that pursuant to the prenuptial agreement, Kelene has no interest in Timmy's stock holdings in Bob Barrows Chevrolet, Inc. or the

---

guage, which pertains to Kelene.

**2.** Kelene disputes whether the two affidavits are part of the agreement.

related real estate, which passes to Tommy under the will, and that the "augmented estate," "exclusive of property passing to [Kelene] by reason of [Timmy's] death or previously transferred to [Kelene], is limited to the Dealership Property."

[¶ 9] The case was transferred to the Waldo County Probate Court. The court held a hearing, consisting solely of attorney arguments with no testimony, on the issue of Kelene's petition for an elective share and the corresponding petition by the estate to enforce the prenuptial agreement and deny the elective share. Following the hearing, the parties filed briefs with the court in support of their respective positions. Kelene argued that the language in the agreement was not effective as a waiver of her elective share. The estate contended that the agreement was valid and applied upon the death of Timmy.

[¶ 10] The court issued an order, granting the personal representative's petition to enforce the prenuptial agreement, and denying Kelene's petition for an elective share, finding from the language of the agreement and the attached affidavits that the intent of the parties was that the agreement "be [e]ffective also upon the death of either party." The court made no express ruling on Kelene's contention that even if the agreement is effective upon death, the language is insufficient to constitute a waiver of Kelene's elective share pursuant to 18–A M.R.S. § 2–204. Kelene filed this appeal.

## II. DISCUSSION

[¶ 11] Each party contends that the plain language of the prenuptial agreement is unambiguous and favors his or her interpretation. Kelene contends that the operative language of the contract in the seven numbered sections refers only to divorce or legal separation and "[does] not provide

for what happens to the property in the event of the death of a party." The estate argues that the prefatory language is part of the contract and should not be rendered meaningless by interpreting the agreement to not apply upon the death of the parties. Kelene further argues that, even if the agreement is applicable upon the death of either party, the language is insufficient to constitute an effective waiver of her statutory right to an elective share of Timmy's estate pursuant to 18–A M.R.S. § 2–204.

A. Applicability of the Prenuptial Agreement on Death

[¶ 12] The Court "review[s] de novo the interpretation of documents when the trial court finds no ambiguity in the documents and declines to take extrinsic evidence." *In re Ross Family Trusts*, 2002 ME 89, ¶ 5, 797 A.2d 1268, 1269–70. Whether language in a contract is ambiguous is a question of law that is reviewed de novo. *Lee v. Scotia Prince Cruises, Ltd.*, 2003 ME 78, ¶ 9, 828 A.2d 210, 213. Language is ambiguous when it is reasonably susceptible to different interpretations. *Acadia Ins. Co. v. Buck Constr. Co.*, 2000 ME 154, ¶ 9, 756 A.2d 515, 517. "If the language of the contract is ambiguous, however, its interpretation is a question of fact for the factfinder." *Id.* ¶ 8, 756 A.2d at 517.

[¶ 13] "It is a well established principle that a contract is to be interpreted to give effect to the intention of the parties as reflected in the written instrument, construed in respect to the subject matter, motive and purpose of making the agreement, and the object to be accomplished." *Foster v. Foster*, 609 A.2d 1171, 1172 (Me.1992). We have long recognized that "canons of construction require that a contract be construed to give force and effect to all of its provisions, and we will

avoid an interpretation that renders meaningless any particular provision in the contract." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.,* 2005 ME 93, ¶ 10, 878 A.2d 504, 507 (quotation marks omitted). Even though courts look to the "entire instrument when construing the contract," we have held that "broad language contained in an introductory paragraph does not expand the actual settlement provisions of an agreement." *Ackerman v. Yates,* 2004 ME 56, ¶¶ 10, 12, 847 A.2d 418, 422–423.

[¶ 14] In a similar case, in determining that a wife did not waive her right to an elective share or other rights in the estate of her husband through a prenuptial agreement, we stated: "The central fact is that this agreement contains no waiver whatsoever of the rights of one spouse at the death of the other. *In no way does it speak of death.*" *Estate of Berzinis,* 505 A.2d 86, 86 (Me.1986) (emphasis added). By contrast, where "[a]ll of the numbered paragraphs [in a prenuptial agreement] deal[t] with plaintiff's rights as widow of defendant, and use[d] terms such as dower, distributive share, and descent" we concluded that the broad language in the prefatory "whereas" clauses did not expand the actual settlement provisions of the contract to apply to marital property rights in the event of divorce. *Foster,* 609 A.2d at 1172.

[¶ 15] Unlike the prenuptial agreement in *Berzinis,* 505 A.2d at 86, the agreement in this case does "speak of death." Specifically, the prefatory language in the "whereas" clause of the contract indicates by its plain language that "the parties desire to fix and determine by this Agreement their mutual property rights and obligations during the marriage, in the event of their divorce, *or upon the death of either of them.*" (Emphasis added.) The numbered provisions, which fix the rights and obligations of the parties, are labeled "Estate of . . . ." and state that all property acquired by either party during the marriage or after an agreement of legal separation "shall be and remain his [or her] personal estate and constitute non-marital property pursuant to 19 M.R.S.A. Section 722–A." Despite the fact that the prefatory clause states that the parties desire to fix their mutual property rights and obligations upon the death of either of them, none of the provisions that actually speak to the disposition of property explicitly reference death. They refer specifically to "non-marital property," a term of art relating to property rights upon legal separation or divorce, and each cite to former 19 M.R.S.A. § 722–A, which governed property rights upon divorce and annulment. They do not cite to the probate code.

[¶ 16] The word "estate," used in the substance of the agreement, can be construed as fixing the parties' rights upon the death of either of them, when read in combination with the prefatory language. The estate does not dispute that the word "estate" can refer to both property of a decedent as well as property belonging to a living person. Thus, the fact that the recitals, which follow the heading "Estate of MR. BARROWS," are couched in language often used in divorce or legal separation proceedings, is not dispositive in and of itself.

[¶ 17] Another reasonable interpretation of the agreement would place emphasis on the word "and" in the phrase in the agreement that provides: "shall be and remain his [or her] personal estate *and* constitute non-marital property pursuant to 19 M.R.S.A. Section 722–A." This gives rise to a second, reasonable alternative reading of the agreement under which it could be construed to mean that the property is to

remain as part of Timmy's estate upon his death *and* upon divorce.

[¶ 18] Because the language in the prefatory clause and the reference to death in the affidavits creates an ambiguity that cannot be resolved from the four corners of the document, and should be resolved by the taking of extrinsic evidence, we remand for hearing and admission of extrinsic evidence and factual findings on this issue. *See Farrington's Owners' Ass'n*, 2005 ME 93, ¶ 10, 878 A.2d at 507.

B. Waiver of the Statutory Right to Elective Share

■ [¶ 19] Kelene's additional contention is that even if the prenuptial agreement is construed to apply upon the death of either party, she is still entitled to an elective share of the augmented estate pursuant to 18–A M.R.S.A. § 2–201, because the language in the contract does not constitute an effective waiver of her statutory right pursuant to 18–A M.R.S. § 2–204. This is so, Kelene contends, because the agreement "does not use the word 'waive,' does not mention the elective share, and does not use any words waiving 'all' or 'any' rights that Kelene may have." The estate argues that the waiver of the right to an elective share or of "all rights" in the property of a prospective spouse need not be explicit, and that by agreeing that the property at issue shall be and remain Timmy's personal estate and constitute non-marital property, Kelene waived her right to claim a share of that property upon Mr. Barrows' death.

[¶ 20] Pursuant to 18–A M.R.S. § 2–204, a spouse can waive the right to an elective share through a prenuptial agreement as follows:

The right of election of a surviving spouse ... may be waived, wholly or partially, before or after marriage, by a written contract, agreement or waiver signed by the party waiving after fair disclosure. Unless it provides to the contrary, a waiver of "all rights," or equivalent language, in the property or estate of a present or prospective spouse ... is a waiver of all rights to elective share ... by each spouse in the property of the other ....

[¶ 21] The agreement does not mention elective share or a waiver of "all rights." The agreement specifically lists property held by Timmy prior to the marriage, including the Dealership Property, which "shall be and remain [Timmy's] separate non-marital property" and then states that "*all property* acquired by [Timmy] subsequent to the marriage ... shall be and remain his personal estate and constitute non-marital property pursuant to 19 M.R.S.A. Section 722–A." This clause stating that "all property" acquired by Timmy after the marriage is to "remain his personal estate and constitute non-marital property" could be construed as satisfying the waiver provision in 18–A M.R.S. § 2–204, because pursuant to the statute, unless the agreement provides otherwise, a "waiver of 'all rights,' *or equivalent language* in the property or estate of a present or prospective spouse ... is a waiver of all rights to elective share." (Emphasis added.)

[¶ 22] The specific references in the agreement to "non-marital property" and to section 722–A of former title 19, the specific statutory provision governing property upon divorce, creates a question as to whether the waiver applies to an elective share. The Probate Court should consider extrinsic evidence to determine whether the parties intended the phrase "shall be and remain his personal estate" to mean Timmy's estate upon his death. If so, then the provision can be construed as an effective waiver of the elective share through the use of "equivalent language"

because it effectively constitutes a waiver of rights in all of Timmy's property, even though it does not specifically use the word "waive."

[¶ 23] Because the contract language is ambiguous with respect to its applicability upon the death of a party, we remand for the court to consider extrinsic evidence relevant to the intention of the parties as to the applicability of the agreement upon death, as opposed to upon divorce or separation, and whether the agreement was intended to be a waiver of the spousal elective share.

The entry is:

Judgment vacated. Remanded to the Probate Court for further proceedings consistent with this opinion.