2010 ME 63

**COASTAL VENTURES et al.**

v.

**ALSHAM PLAZA, LLC, et al.**

Supreme Judicial Court of Maine.

Argued: May 19, 2010.
Decided: July 20, 2010.

417

Charles E. Gilbert, III, Esq. (orally), Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, ME, for Alsham Plaza, LLC, Alsham Supermarket, LLC, and Basel Soukarieh.

Frederick J. Badger, Jr., Esq., Heidi J. Hart, Esq. (orally), Richardson, Whitman, Large & Badger, Bangor, ME, for Coastal Ventures, William Bush, and Jane Bush.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Alsham Plaza, LLC; Alsham Supermarket, LLC; and Basel Soukarieh (Alsham) appeal from a judgment entered in the Business and Consumer Docket (*Nivison, J.*) on a pleading by agreement filed pursuant to M.R. Civ. P. 8(g)[1] by Alsham and Coastal Ventures, William Bush, and Jane Bush (Coastal) in which Coastal alleged a breach of contract resulting from Alsham's purchase of a grocery store and clothing store in Columbia and requested a declaratory judgment concerning the effect of a non-competition agreement. Alsham contends the court erred in: (1) concluding that the parties had a binding agreement for the transfer of $50,000 worth of inventory from the clothing store and enforcing the terms of that agreement; (2) ordering Alsham to restore the flow of water from a well on Alsham's property to Coastal's property; and (3) determining that the parties' non-competition agreement neither applied to subsequent purchasers of Coastal's remaining property nor precluded Coastal from selling competing products in its remaining businesses. Coastal challenges the timeliness of Alsham's appeal and, in the alternative, cross-appeals from the court's denial of its request for attorney fees and costs related to the litigation of the non-competition agreement. We conclude that the appeal is timely and affirm the judgment.

## I. BACKGROUND

[¶ 2] The court found the following facts, which are supported by the record and not disputed on appeal. William and Jane Bush are the sole shareholders of Coastal Ventures. In 1984, Coastal purchased a shopping center that spanned both sides of Route One in Columbia. Over the course of more than twenty years, Coastal established and operated several businesses at the shopping center: Columbia Supermarket, Bush's Family Clothing Store, and a gas station on one side of Route One; and Crossroads Ace Hardware Store on the opposite side of Route One. Coastal also owned the real property underlying the businesses. At all relevant times, Coastal sold cigarettes, cleaning supplies, and pet supplies at the hardware store. A well on the supermarket property supplied water to the adjacent gas station property.

[¶ 3] Early in 2006, Coastal engaged a commercial real estate broker to sell the shopping center. Soukarieh learned that the shopping center was for sale and traveled to Maine in June of that year to visit and evaluate all of the stores in the shopping center. Soukarieh then contacted Coastal's broker and expressed his interest in the shopping center, particularly the supermarket. Soukarieh met with the Bushes on the morning of July 13, 2006, to discuss purchasing the supermarket; at that time, Soukarieh walked through all of Coastal's properties again.

[¶ 4] The parties entered into a purchase and sale agreement for a portion of the shopping center on July 17, 2006. In consideration for payment of $1,725,000, Coastal was to transfer two businesses— Columbia Supermarket and Bush's Family

---

1. M.R. Civ. P. 8(g) provides:

 **Pleadings by Agreement.** An action may be commenced and issue joined therein, without the filing or service of a complaint and answer, by the filing of a statement, signed and acknowledged by all the parties or signed by their attorneys, specifying plainly and concisely the claims and defenses between the parties and the relief requested. Signing constitutes a certificate that the issues are genuine.

Clothing—and the real property housing these businesses to Alsham. Although the sale did not include the adjacent gas station or the property underlying the gas station, the purchase and sale agreement included a reference to a utility easement by which the existing well on the supermarket property would continue to supply water to the gas station.[2]

[¶ 5] The purchase and sale agreement included a non-competition clause, and the parties later signed a separate, comprehensive non-competition agreement. In that agreement, Coastal agreed to "no longer engage in the supermarket or clothing store business" nor directly or indirectly compete with the businesses acquired by Alsham for ten years within a twenty-mile radius of the shopping center. As part of the non-competition agreement, the parties agreed: "This Agreement shall inure to the benefit of and be binding upon the Parties and their respective heirs, personal representatives, successors, and assigns." The parties also included an indemnification clause, providing that "Alsham ... shall indemnify Coastal ... and agree to hold Coastal ... harmless by reason of any losses, injuries, costs or damages, including [attorney] fees, which may arise out of Alsham's operation of the Business[3] after the Closing Date."

[¶ 6] In an addendum to the purchase and sale agreement, the parties agreed that the sale of the clothing store included "all personal property used in the business and the business inventory which shall be capped at $50,000." The parties also

agreed that before closing, they would conduct an inventory of the clothing store business to determine which items would be transferred as part of the sale.

[¶ 7] Although the parties originally agreed to close the sale on September 29, 2006, the closing did not occur until October 19, 2006. Because the inventory of the clothing store had not been completed, however, Soukarieh held back $50,000 of the agreed-upon purchase price to cover the subsequent purchase of the inventory.

[¶ 8] The parties unsuccessfully attempted to coordinate a time to complete the inventory over the next several months, but the inventory was never conducted, and that portion of the sale was never completed. Coastal continued to operate the clothing store until January of 2007, and after the store closed, one of Coastal's employees set aside clothing that she believed was worth $50,000 and could be sold when Alsham took over the business. Coastal retained this inventory through the present litigation.

[¶ 9] In April or May of 2007, Alsham stopped the flow of water from the well on the supermarket property to the gas station after receiving a letter from the Department of Health and Human Services regarding state regulation of public water supplies. Alsham determined that it could not legally supply water to the gas station from the well without complying with the regulation, and did not want to incur the costs associated with compliance.

---

2. The easement was reserved in the deed from Coastal Ventures to Alsham Plaza, LLC, which provided Coastal Ventures, as grantors, as appurtenant to and for the benefit of the aforedescribed "gas station parcel" the perpetual right, privilege and easement to take water from the well upon the aforedescribed "locus" parcel conveyed herein, together with the right to maintain said well and all casing, structures, pipes, conduits,

pumps, electrical fixtures and expressly including the right to use and maintain the pipes contained within the buildings upon the "locus" parcel being conveyed herein.

3. The parties defined "the Business" as the "supermarket and ... retail clothing store located at 11 Addison Road, Columbia, Washington County, Maine."

[¶ 10] On August 31, 2007, the parties filed a pleading by agreement, pursuant to M.R. Civ. P. 8(g), in the Superior Court (Washington County). Coastal sought a declaratory judgment, pursuant to 14 M.R.S. §§ 5953, 5955 (2009), regarding its rights and obligations under the non-competition agreement, and specifically asked: (1) whether Coastal would violate the agreement by selling the gas station or hardware store to a third party that might compete with Alsham; and (2) whether Coastal's sale of cigarettes, pet supplies, and cleaning products in the hardware store was in violation of the non-competition agreement because Alsham sold similar products at the supermarket. Coastal also asserted breach of contract claims from Alsham's refusal to proceed with the sale of the inventory and to supply the gas station with water. Alsham counterclaimed for damages for misrepresentation, unpaid rent, and conversion of a television set.[4] The case was transferred to the Business and Consumer Court Docket on September 19, 2007.

[¶ 11] The court conducted a non-jury trial from January 7, 2009, to January 15, 2009, and issued its decision on February 3, 2009. On Coastal's claim for declaratory judgment, the court found that the parties intended the non-competition agreement to be a personal obligation of the Bushes, and Coastal was neither restricted from selling overlapping products nor prohibited from selling its remaining businesses to a third party that may compete with Alsham.

[¶ 12] On Coastal's breach of contract claim for the well easement, the court found that Alsham was obligated to supply water to Coastal and ordered Alsham to restore the flow of water. Because Alsham presented no evidence to support its assertion that it was unable to legally supply water to the gas station, the court rejected Alsham's argument, but allowed Alsham to calculate the costs of complying with the relevant drinking water statutes, and then submit the issue back to the court if the parties failed to agree on whether those costs were an undue burden on Alsham's estate.

[¶ 13] On Coastal's breach of contract claim regarding the inventory, the court found that the only unmet condition to fulfilling the sale was the completion of the inventory. The court found that both parties were at fault for the delay in conducting the inventory, but that neither party was in breach of the agreement. The court concluded that the parties still had a binding agreement "for the transfer of the clothing store, including the inventory, and that the value of the inventory to be transferred is $50,000." The court ordered the parties to arrange for a valuation of the inventory within thirty days, Alsham to pay up to $50,000 for the inventory, and Coastal to transfer the items. The court allowed the parties to return to court within fourteen days should they not agree on an entity to conduct the valuation.

[¶ 14] In response to Alsham's motion requesting additional time to comply with the court's order related to the inventory, the court clarified its judgment on March 3, 2009. The court ordered the inventory to be conducted according to traditional industry standards within thirty days, and again allowed the parties to return to

---

4. On Alsham's counterclaims, which are not disputed on appeal, the court found that Coastal did not commit affirmative or negligent misrepresentation, but did owe Alsham for unpaid rent for their use of an apartment on Alsham's property and the clothing store during the period of December 19, 2006, to April 2, 2007. The court also ordered Coastal to return the television set that the Bushes had removed from the supermarket after the closing.

court should they not agree on an entity to conduct the valuation. Because the parties still could not agree, the court designated RGIS Inventory Specialists to conduct the inventory in a second post-judgment order dated March 17, 2009.

[¶ 15] RGIS conducted the inventory on April 10, 2009, and valued the items at $49,766.36 by calculating the retail cost and then reducing the prices by the items' margins. The parties provided a copy of the inventory to the court in a letter dated May 14, 2009. When Alsham objected to RGIS's valuation method, the court asked the parties to submit their positions in writing on the disputed inventory.

[¶ 16] In its last order, dated June 11, 2009, the court concluded that the inventory had been conducted in a manner consistent with industry practice as the parties had agreed and the court had intended, and, because Alsham would have incurred increased costs in maintaining its own water supply regardless of whether Alsham supplied the water to Coastal, Alsham's obligation to supply water to Coastal did not create an undue burden on its estate.

[¶ 17] Alsham filed a notice of appeal pursuant to M.R.App. P. 2 and 14 M.R.S. § 1851 (2009) on July 1, 2009. Coastal cross-appealed pursuant to M.R.App. P. 2 and 14 M.R.S. § 1851, and, pursuant to M.R.App. P. 4(c),[5] moved to dismiss the appeal as untimely. We consolidated the motion to dismiss with the merits of the appeal by order dated July 29, 2009.

## II. DISCUSSION

### A. Timeliness of the Appeal

 [¶ 18] As a threshold matter, Coastal contends that Alsham's appeal of the June 11, 2009, order was untimely, and instead should have been taken from the

order dated February 3, 2009, or alternatively, the order dated March 17, 2009. We have long repeated the general rule that every appeal must be taken from a final judgment. *See, e.g., Estate of Dore v. Dore,* 2009 ME 21, ¶ 11, 965 A.2d 862, 865. When, as here, the litigation results in several trial court judgments, we review each to determine at what point the court "fully decide[d] and dispose[d] of the whole matter leaving nothing further for the consideration and judgment of the trial court, and ... no subsequent proceedings in the case will render the appellate court's decision immaterial." *Berry v. Berry,* 634 A.2d 451, 452 (Me.1993) (quotation marks omitted); *see also Hazzard v. Westview Golf Club, Inc.,* 217 A.2d 217, 222 (Me. 1966). Contrary to Coastal's suggestion, neither the February 3 nor the March 17 judgment fully disposed of all the issues in the matter. The February 3 decision left unresolved the issues of the inventory and the well easement. Likewise, the March 17 decision did not resolve whether the well easement was overburdened by the costs of maintenance. In short, the matter was not fully decided until the June 11 order, from which Alsham properly and timely appealed. *See Musson v. Godley,* 1999 ME 193, ¶¶ 4–5, 742 A.2d 479, 480–81 (stating that a judgment is not final when it "[leaves] the door open for the parties to return to court" (quotation marks omitted)); *Bowley v. Bowley,* 440 A.2d 332, 333–34 (Me.1982) (holding that a judgment maintaining the status quo while allowing the parties to reach an amicable solution is not an appealable final judgment).

### B. Sale of the Inventory

 [¶ 19] Alsham contends that the evidence is insufficient to support the court's finding of an enforceable agree-

---

5. M.R.App. P. 4(c) provides, in relevant part, that "[i]f an appellant fails to comply with the provisions of these rules within the times pre-scribed herein, the Law Court may, on motion of any other party or on its own initiative, dismiss the appeal for want of prosecution."

ment because Coastal did not tender performance.[6] Because Alsham did not have the burden of proof at trial on the breach of contract issue, we review Alsham's sufficiency of the evidence challenge for clear error. *See Cellar Dwellers, Inc. v. D'Alessio,* 2010 ME 32, ¶ 15, 993 A.2d 1, 5. Consequently, "we examine the record, and the reasonable inferences that may be drawn from the record, in the light most favorable to the trial court's judgment to determine if the facts are supported by competent evidence." *Id.* (quotation marks omitted). Further, in the absence of a motion for further findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(b), we assume that the trial court found all the facts necessary to support the outcome to the extent that they are supported in the record. *See Malenko v. Handrahan,* 2009 ME 96, ¶ 37, 979 A.2d 1269, 1278; *Sutherland v. Morrill,* 2008 ME 6, ¶ 5, 940 A.2d 192, 193.

[¶ 20] Although the court found that both parties were to "blame" for the delay in conducting the inventory, the court made no finding of breach by either party with respect to the sale of the clothing store. Whether a breach of contract

has occurred is a finding of fact reviewed for clear error. *VanVoorhees v. Dodge,* 679 A.2d 1077, 1080 (Me.1996); *cf. Down E. Energy Corp. v. RMR, Inc.,* 1997 ME 148, ¶ 8 n. 4, 697 A.2d 417, 420. Competent record evidence exists to show that the parties mutually assented to the delay of the inventory, and that the completion of the inventory was a condition upon both of their performances. *See* Restatement (Second) of Contracts § 225 (1981).[7] Despite the delay of three years, the parties are still bound by their agreement.

[¶ 21] Further, given the acrimony between the parties and their inability to cooperate on even ministerial tasks, it was not outside of the trial court's discretion to apply its equitable powers and enforce the agreement as written. *See Sullivan v. Porter,* 2004 ME 134, ¶ 25, 861 A.2d 625, 633 ("It is within the trial court's equitable powers to apply the remedy of specific performance when a legal remedy is either inadequate or impractical."); *Hardigan v. Kimball,* 553 A.2d 1265, 1267 (Me.1989).

## C. Utility Easement

[¶ 22] Alsham contends that Coastal's use of the well increased the

---

**6.** Alsham assigns error to the court's decision in two other respects: (1) the value of the inventory has not been established, and (2) performance is impracticable because the purpose of the contract has now been defeated by the passage of time. The first contention is not persuasive because the value of the inventory was established by RGIS in the post-trial proceedings in a method consistent with the parties' and the court's intentions.

The second contention fares no better. Although Alsham cites section 261 of the Restatement (Second) of Contracts for its assertion, the comments to that section make clear that events that would render performance impracticable are "generally due either to 'acts of God' or to acts of third parties." Restatement (Second) of Contracts § 261 cmt.d (1981). Even if we were to adopt this standard, the parties' inability to agree on a

date for an inventory would not qualify under this rule.

**7.** Section 225 of the Restatement (Second) of Contracts states:

> § 225. Effects of the Non–Occurrence Of a Condition
> (1) Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused.
> (2) Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.
> (3) Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur.

Restatement (Second) of Contracts § 225 (1981).

costs of compliance with state drinking water supply regulations, and Alsham was justified in turning off the water supply to Coastal's gas station because the utility easement was overburdening Alsham's property. The issue of whether a property is overburdened by an easement is a question of fact that is reviewed for clear error. *Eaton v. Town of Wells,* 2000 ME 176, ¶ 41, 760 A.2d 232, 246; *see Hartwell v. Stanley,* 2002 ME 29, ¶ 10, 790 A.2d 607, 611 (stating standard of review). The court found that because Alsham would have incurred the compliance costs even if it were not required to supply water to the gas station, the increased costs did not represent an undue burden on Alsham's estate.

[¶ 23] Alsham challenges this conclusion, contending that the court should have allocated a portion of the compliance costs to Coastal because compliance with state regulations is one of the costs of maintaining an easement. Whether Coastal must share in the costs of maintaining the well and easement is not properly before us, however, because it was neither pleaded nor tried to the trial court. *See In re Anthony R.,* 2010 ME 4, ¶ 8, 987 A.2d 532, 534 ("To preserve an issue for appeal, the issue must first be presented to the trial court. . . ."). In the pleading by agreement, Alsham neither claimed that

Coastal had not been properly maintaining the easement nor sought restitution for costs it incurred by complying with state regulations. When Alsham attempted to introduce evidence of easement maintenance costs at trial, Coastal objected and the court excluded the evidence. Alsham made no motion to amend the pleadings to conform to the evidence pursuant to M.R. Civ. P. 15(b),[8] and cannot raise this issue now for the first time on appeal. *See Bernier v. Merrill Air Eng'rs,* 2001 ME 17, ¶¶ 22–24, 770 A.2d 97, 105; *Midland Fiberglass, Inc. v. L.M. Smith Corp.,* 581 A.2d 402, 404 (Me.1990) (deeming issues to be tried by consent only when it is clear that both parties in fact consented).

[¶ 24] Although given the opportunity, Alsham presented no evidence demonstrating that the gas station's use of water from the well hindered the supermarket's use of the water, and no evidence of any change in the use of water from the well by the gas station property. *See Gutcheon v. Becton,* 585 A.2d 818, 822–23 (Me.1991) (listing changes in an easement's use that the court considered when determining whether an easement was now overburdened). The court did not clearly err in finding that Alsham failed to meet its burden of establishing the easement was overburdened. *See Hartwell,* 2002 ME 29, ¶ 10, 790 A.2d at 611; *Eaton,* 2000 ME 176, ¶ 41, 760 A.2d at 246.

---

8. Rule 15(b) of the Maine Rules of Civil Procedure provides:

 **(b) Amendments to Conform to the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not

 affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining an action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

## D. The Non-competition Agreement

### 1. Subsequent Purchasers

[¶ 25] Fundamentally, the parties disagree over the scope and purpose of their non-competition agreement. Coastal contends that the agreement is a personal obligation of the Bushes that forbids them from using their personal expertise to directly compete with Alsham after the completion of the sale. Alsham contends that the agreement not only limits Coastal and the Bushes from competing with Alsham, it also prevents them from selling their remaining businesses to a third party they know will compete with Alsham's businesses. At trial, the parties focused on this language in paragraph twelve of the agreement: "This Agreement shall inure to the benefit and be binding upon the Parties and their respective heirs, personal representatives, successors, and assigns." Alsham contends that this provision is unambiguous and includes all types of successors and assigns and the court erred by admitting extrinsic evidence of the parties' intent. *See Handy Boat Serv., Inc. v. Prof'l Servs., Inc.*, 1998 ME 134, ¶ 13, 711 A.2d 1306, 1309 ("Extrinsic evidence concerning a specific provision of an integrated agreement may not be considered unless the court determines the language of that provision to be ambiguous.").

[¶ 26] Whether a contract term is ambiguous is a question of law that we review de novo. *Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 9, 983 A.2d 400, 403; *Villas by the Sea Owners Ass'n v. Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457, 461. "[A] contractual provision is considered ambiguous if it is reasonably possible to give that provision at least two different meanings." *Villas by the Sea Owners Ass'n*, 2000 ME 48, ¶ 9, 748 A.2d at 461. Further, "[i]t is a well established principle that a contract is to be interpreted to give effect to the intention of the

parties as reflected in the written instrument, construed in respect to the subject matter, motive and purpose of making the agreement, and the object to be accomplished." *Estate of Barrows*, 2006 ME 143, ¶ 13, 913 A.2d 608, 611 (quotation marks omitted).

[¶ 27] The court concluded, and we agree, that the provision, within the context of the rest of the agreement, is "reasonably susceptible to more than one interpretation" and therefore ambiguous. *Madore v. Kennebec Heights Country Club*, 2007 ME 92, ¶ 7, 926 A.2d 1180, 1183. Although paragraph twelve states that the agreement "shall inure to the benefit and be binding upon the Parties and their respective heirs, personal representatives, successors, and assigns," the previous paragraph states that "[n]either party to this Agreement may assign any of its rights or delegate any of its responsibilities under this Agreement except that Alsham may assign this Agreement to any entity that succeeds to all or substantially all of the Business through any purchase of assets, merger, or otherwise." Paragraph twelve thus lends itself to both the interpretations that Alsham and Coastal ascribe to it. *See id.* ¶ 8, 926 A.2d at 1183–84. "Because the contract language gives rise to two reasonable and different interpretations," the court did not err by admitting extrinsic evidence of the parties' intent to construe the agreement. *Id.* (citing *Barrows*, 2006 ME 143, ¶ 23, 913 A.2d at 614).

[¶ 28] Based on the testimony of Mrs. Bush and Coastal's real estate broker, the court properly found that the purpose of the agreement was to prevent the Bushes from using their expertise, experience, and good will to open another supermarket or clothing store in direct competition with Alsham within a twenty-mile radius. *See*

*Madore,* 2007 ME 92, ¶ 9, 926 A.2d at 1184; *Barrows,* 2006 ME 143, ¶ 18, 913 A.2d at 613 (noting that ambiguity in a document is properly resolved by consideration of extrinsic evidence). The non-competition agreement is thus a personal obligation, and does not prevent Coastal from selling its remaining businesses to a third party who may eventually compete with Alsham, and the court did not clearly err in so finding. *Spottiswoode v. Levine,* 1999 ME 79, ¶ 16, 730 A.2d 166, 172 ("The intent of the parties in entering a contract is a question of fact that we review for clear error."). Alsham's remaining arguments regarding the effect of the non-competition agreement on subsequent purchasers are not persuasive, and we do not address them.

## 2. Sale of Similar Products

[¶ 29] Alsham also contends that the court erred in concluding that Coastal's sale of similar products in the hardware store does not violate the non-competition agreement because the agreement clearly provides that Coastal is not to compete directly or indirectly in any manner with Alsham. In their recitals, the parties stated: "After the Closing Date, Coastal and the Bushes will no longer engage in the supermarket or clothing store *business*" (emphasis added). The parties went on to agree that:

1. Coastal and the Bushes agree that for a period often (10) years from the date of this Agreement, and within a twenty (20) mile radius of 11 Addison Road, Columbia, Washington County, Maine, neither Coastal nor the Bushes will:

 i. compete with Alsham or any entity under its common control and/or the Business, directly, or indirectly, through any person or entity in any capacity including, without limitation, agent, trustee, consultant, sharehold-

er, director, officer, manager, member, employee, or partner;

 ii. be employed by or perform any services as an employee, consultant, or otherwise, for any person, firm, partnership, limited liability company, joint venture, corporation, or other entity that competes with the Business or Alsham or any entity under its common control; or

 iii. invest in, lend money to, guaranty loans for, make gifts to, advise, or assist any other person or entity that competes with the Business or Alsham or any entity under its common control.

Alsham contends that this language unambiguously prohibits Coastal from competing with Alsham in any manner, but the trial court disagreed and admitted evidence of the parties' intent and knowledge upon entering into the agreement.

[¶ 30] As noted, whether a contract term is ambiguous is a question of law that we review de novo. *Richardson,* 2009 ME 109, ¶ 9, 983 A.2d at 403; *Villas by the Sea Owners Ass'n,* 2000 ME 48, ¶ 9, 748 A.2d at 461. Contrary to Alsham's contention, the language is ambiguous. *See Madore,* 2007 ME 92, ¶ 8, 926 A.2d at 1183–84. The language in paragraph one could be reasonably interpreted to prohibit Coastal from engaging in a competing *business* or reasonably interpreted to prohibit Coastal from selling competing *products.* The court did not err in considering the extrinsic evidence of the parties' intent and knowledge when entering into the agreement because the language in question was ambiguous. *Id.*

[¶ 31] Testimony at trial established that Alsham was aware that the hardware store sold similar products prior to its purchase of the supermarket and understood that Coastal would continue to operate and attempt to sell its remaining businesses. The circumstances surrounding

the sale of the businesses and the testimony at trial support the court's determination that the parties did not intend the agreement to limit Coastal's sale of similar products, *see Seashore Performing Arts Ctr., Inc. v. Town of Old Orchard Beach,* 676 A.2d 482, 484 (Me.1996), and the court did not clearly err in so determining, *see Spottiswoode,* 1999 ME 79, ¶ 16, 730 A.2d at 172. Alsham's remaining arguments regarding the sale of similar products are not persuasive, and we do not address them.

E. Attorney Fees

[¶ 32] Finally, Coastal contends that the court erred in failing to award it attorney fees pursuant to paragraph six of the non-competition agreement, which states: "Alsham and Soukarieh shall indemnify Coastal and the Bushes, and agree to hold Coastal and the Bushes harmless by reason of any losses, injuries, costs or damages, including [attorney] fees, which may arise out of Alsham's operation of the Business after the Closing Date." This clause unambiguously requires Alsham to indemnify Coastal for losses or injuries that arise out of the operation of the clothing store and the supermarket after the transfer of the businesses. It does not include costs or fees associated with a claim by Coastal as to the meaning and scope of the agreement. *See Lee v. Scotia Prince Cruises Ltd.,* 2004 ME 24, ¶ 9, 843 A.2d 753, 756 (stating that "[a] claim for attorney fees and costs under an indemnification agreement is limited to those expenses incurred in the defense of the claim indemnified against" (quotation marks omitted)).

The entry is:

Judgment affirmed.