STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
DOCKET NO. BCDWB-CV-2020-30

CENTRAL MAINE COMMERCE CENTER,
L.P.,

            Plaintiff,

     v.

PROTOCALL CONTACT SERVICES, INC.,

            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

ORDER GRANTING PLAINTIFF'S MOTION
FOR ADDITIONAL ATTACHMENT AND
ATTACHMENT ON TRUSTEE PROCESS

Before the Court is Plaintiff Central Maine Commerce Center, L.P.'s ("CMCC's") motion for additional attachment and additional attachment on trustee process pursuant to M. R. Civ. P. 4A(f) and 4B(h). The Court previously issued an unopposed order, dated September 23, 2020 (the "Original Attachment Order") granting attachment and attachment on trustee process in the amount of $723,216.16. In order to facilitate settlement negotiations, however, CMCC did not serve attachment and attachment on trustee process within 30 days of the issuance of the Original Attachment Order. Settlement discussions were unsuccessful, and now Defendant Protocall Contact Services, Inc. ("Protocall") opposes CMCC's motion. CMCC contends that Protocall waived its arguments by not opposing the original motion. CMCC also asserts that because the criteria for approving attachment continue to be met, the Court may properly grant its motion. The Court agrees with both arguments, and grants CMCC's motion for additional attachment and attachment on trustee process in the amount of $723,724.64.

1

## FACTUAL BACKGROUND

According to the affidavits and pleadings in this case, Protocall was in a commercial lease agreement with CMCC concerning premises located at 45 Commerce Drive in Augusta, Maine. Originally, the lease provided that Protocall would pay a base rent of $14.00 per month per square foot for 20,411 square feet. This amount was set to increase yearly. In addition to the base rent, the Lease required Protocall to pay a pro-rata share of the premises' operating expenses.[1] Together, the base rent and operating expenses account for the total rent.

CMCC alleges that Protocall ceased to pay rent after July 2019. As a result, CMCC filed an action for forcible entry and detainer, which was heard in Augusta District Court on October 7, 2019. At the hearing, Protocall agreed to judgment for possession and for a back rent award of $129,844.96. However, CMCC delayed serving the writ of possession, and instead entered into a Reinstatement Agreement with Protocall. According to the agreement, reinstatement of the Lease was conditioned upon payment of the amount then owing on the judgment from the forcible entry and detainer matter, as well as additional back rent and fees accrued. The Reinstatement Agreement was also conditioned on a number of other terms and conditions, including that: 1) Protocall would be permitted to reduce its total square footage rented from 20,411 to 16,036; 2) that Protocall would deliver to CMCC a security deposit equal to one-month's rent by January 1, 2020; and 3) that Protocall would alert CMCC at least once per quarter of its largest accounts and their points of contact. Finally, the Reinstatement Agreement provided that Protocall consented to the maximum extent permitted by law, to CMCC's use of Attachment and/or Trustee Process to protect its interests.

---

[1] At the time of the Lease's execution, this amounted to 7.57% based on 20,411 square feet leased, out of the 269,523 available.

Protocall made its last payment, in the amount of $50,000, on December 20, 2019. Protocall continued to occupy the leased space, but CMCC alleges it failed to pay the agreed upon security deposit, did not pay rent in January or February, and did not comply with various other provisions of the Reinstatement Agreement. On February 4, 2020 Protocall vacated the premises. However, CMCC asserts that the lease remained in effect until CMCC secured a new tenant, but for a significantly lower monthly rent. Upon securing the new tenant, CMCC utilized its option under Paragraph 15 of Lease to terminate Protocall's tenancy and demand damages in the amount of the difference between Protocall's remaining obligations and the fair market value of the Lease over the same period, reduced by any estimated vacancy periods, and discounted by five percent per annum. CMCC also asserted it is owed back rent plus attorney's fees, and two additional months rent as liquidated damages under Paragraph 6 of the Reinstatement Agreement.

As a result, CMCC sought an order granting attachment and attachment on trustee process in an amount of $ 723,724.64. The motion contained the required affidavits to support an order granting attachment, and Protocall chose not to oppose the motion. For these reasons, the Court issued the unopposed Original Attachment Order on September 23, 2020, finding that "it is more likely than not that the Plaintiff will recover judgment, including interests and costs, in an amount equal to or greater than $723,724.64," and ordering that attachment and trustee process be made in that amount against Protocall's property. However, CMCC did not serve the attachment and attachment on trustee process within 30 days of issuance of the Original Attachment Order because it was engaged in settlement discussions with Protocall. The discussions have not led to a settlement. Because more than 30 days have passed since the Original Attachment Order was issued, CMCC again seeks attachment and attachment on trustee process in the amount of $723,724.64 so that it may be enforced against Protocall and upon third party trustees.

**LEGAL STANDARD**

Maine Rule of Civil Procedure 4A and 4B establish the processes by which a plaintiff may acquire a writ of attachment or attachment on trustee process. According to Rule 4A, the Court may approve attachment after notice to the defendant, a hearing, and a finding by the Court that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process known or reasonably believed to be available to satisfy the judgment. M. R. Civ. P. 4A(c). Attachment on trustee process may be granted under similar circumstances. M.R. Civ. P. 4B. Any attachment shall be made within 30 days after the order approving the writ of attachment. M. R. Civ. P. 4A(c). If no writ of attachment has issued, or if the 30-day time period for making attachments has expired, the Court on motion may issue an order of approval for subsequent or additional attachment of real estate, goods and chattels, or other property. M. R. Civ. P. 4A(f). The only requirements are that "the time for acting under the first attachment order has expired and that the criteria for approving any attachment at all continue to be met." *TBA Partnership v. Maxwell*, 591 A.2d 239, 240 (Me. 1991).

When applying the "more likely than not" standard, the Court must consider whether or not the movant's affidavit provides the Court with a factual foundation sufficient to support a finding that it is more likely than not that the movant will prevail on its claim. *See Libby O'Brien Kingsley & Champion, LLC v. Blanchard,* 2015 ME 101, ¶ 5, 121 A.3d 109. To be entitled to attachment and trustee process, "[a] moving party must show a greater than 50 percent chance of prevailing." *Liberty v. Liberty,* 2001 ME 19, ¶ 12 n.4, 769 A.2d 845; M.R. Civ. P. 4A Advisory Committee's Note- 1992.

4

## DISCUSSION

The Court will first address CMCC's waiver argument, and then turn to the substantive arguments. As discussed below, the outcome is the same under either analysis.

### Waiver

Protocall had the opportunity to contest the first attachment motion, but it did not. The Court issued an unopposed order deciding the issues and granting the motion. The analysis now is whether the criteria for approving the first attachment continue to be met. *TBA Partnership v. Maxwell*, 591 A.2d at 240. Protocall is entitled to challenge whether the criteria continue to be met, e.g. that some event has occurred since the Original Attachment Order was issued, the impact of which means the attachment criteria can no longer be satisfied. But that is not what Protocall argues. Instead, Protocall argues that the motion should be denied because of the same criteria that existed when it previously declined to oppose attachment. Since Protocall could have made these arguments in response to the first motion, however, the arguments have been waived. *Infosecurus, Inc. v. Peterson,* No. CV-16-0203, 2018 Me. Super. LEXIS 79, at *40 (May 17, 2018) ("the failure to mention an issue in the brief or at argument is construed as either an abandonment or a failure to preserve that issue") (citing *Holland v. Sebunya,* 2000 ME 160, ¶ 9 n.6, 759 A.2d 205). Since Protocall offers no other basis to oppose the motion, the Court grants the motion for additional attachment and attachment on trustee process in the amount of $723,724.64.

### Merits

CMCC contends that because the Court has already made the requisite findings necessary to support attachment and there have been no changes in circumstances that would subsequently render attachment and trustee process inappropriate, the Court should grant CMCC's motion for additional attachment. Protocall disagrees, stating that the criteria for approval of attachment in

the amount of $723,724.64 cannot be met because it is not "more likely than not" that CMCC will recover a judgment of that amount. Even if Protocall did not waive these arguments, as discussed above, the arguments fail on the merits.

Protocall's arguments turn on two contractual provisions: Paragraph 15(b) of the Lease, and Paragraph 6 of the Reinstatement Agreement. CMCC contends it is entitled to damages under Paragraph 15(b), as well as liquidated damages under Paragraph 6. Protocall takes the position that CMCC's damages are limited to those under Paragraph 6 (two-month's rent or approximately $50,000), which supplants the award provided for in Paragraph 15(b).

"It is a well established principle that a contract is to be interpreted to give effect to the intention of the parties as reflected in the written instrument, construed in respect to the subject matter, motive and purpose of making the agreement, and the object to be accomplished." *In re Estate of Barrows,* 2006 ME 143, ¶ 13, 913 A.2d 608 (citing *Foster v. Foster,* 609 A.2d 1171, 1172 (Me. 1992). When interpreting a contract, Courts must "look at the entire instrument" and attempt to "give effect to all of its provisions." *Ackerman v. Yates,* 2004 ME 6, ¶ 12, 814 A.2d 989. "An interpretation that renders portions of a contract redundant or superfluous… is not reasonable." *Dow v. Billing,* 2020 ME 10, ¶ 22, 224 A.3d 244.

Paragraph 15(b) of the Lease provides CMCC with damages if it terminates the Lease due to non-payment of rent. It reads as follows:

> Landlord may, at its option, elect to recover from Tenant, and Tenant shall pay to Landlord on demand . . . an amount equal to the difference between (i) all monthly Base Rent, Additional Rent and other sums which would be payable under this Lease from the date of such demand . . . for what would be the then unexpired Term in the absence of such termination and (ii) the fair market rental value of the Lease Premises over the same period (net of all expenses and all vacancy periods reasonably projected by Landlord to be incurred in connection with reletting the premises), with such differential discounted at 5% per annum . . . Nothing herein

6

shall be construed to affect or prejudice Landlord's right to prove, and claim in full, unpaid Rent or any other amounts accrued prior to termination of this Lease.

(Exibit A to Pl's Compl. at ¶ 15(b)). CMCC asserts, and the Court agrees, that Paragraph 15(b) is a mechanism by which the amount owing under the Lease is determined in the event a particular condition occurs (here, termination of the lease by the landlord due to tenant nonpayment). As such, the plain language of Paragraph 15(b) provides that the Landlord is entitled to the difference between the sums which would be payable under the Lease and the fair market value over the Lease's term, net expenses and reasonably projected vacancy periods, discounted at five percent per annum. Paragraph 15(b) states no requirement for the landlord to take legal action in the event of termination for nonpayment.

In seeking an attachment order in the amount of $723,724.64, CMCC combines the amount of damages due to it under Paragraph 15(b) of the Lease, with the liquidated damages provided in Paragraph 6 of the Reinstatement Agreement. Protocall, however, asserts that rather than supplementing Paragraph 15(b), Paragraph 6 of the Reinstatement Agreement supplants it. Paragraph 6 of the Reinstatement Agreement reads, in relevant part:

> In the event CMCC is forced to take legal action to collect amounts owed under the lease, in addition to the amounts owed as rent and attorney's fees, [Protocall] agrees to pay two month's rent as liquidated damages.

(Exhibit C to Pl.'s Compl. at ¶ 6). The plain language of Paragraph 6 of the Reinstatement Agreement makes clear that CMCC is entitled to two months rent as liquidated damages in the event it is forced to take legal action to collect amounts owed under the lease. These liquidated damages are, by Paragarph 6's terms, "*in addition to* the amounts owed as rent and attorney's fees." Thus, the Court finds CMCC's inclusion of damages under Paragraph 15(b) of the Lease, supplemented by two month's rent as liquidated damages under Paragraph 6 of the Reinstatement Agreement, to be consistent with the plain language of Paragraph 6.

7

Nevertheless, in Protocall's view Paragraph 6 modifies the Lease and supplants the liquidated damages calculation provided in Paragraph 15(b). Protocall asserts that Paragraph 6 does not state that the remedy therein is in addition to the Paragraph 15(b) liquidated damages. As such, Protocall argues that the plain language of Paragraph 6 indicates CMCC is *only* entitled to damages amounting to two months rent, or approximately $50,000, rather than the $723,724.64 contained in the motion for additional attachment.

The Court finds Protocall's argument unpersuasive. As previously stated, when interpreting a contract, the Court is required to "give effect to the intention of the parties as reflected in the written instrument, construed in respect to the subject matter, motive and purpose of making the agreement, and the object to be accomplished." *In re Estate of Barrows,* 2006 ME 143 at ¶ 13. Examining the two provisions, considering the purposes for making the agreements, and giving full effect to intention of the parties, it is clear that Paragraph 15(b) of the Lease and Paragraph 6 of the Reinstatement Agreement serve two distinct purposes. While Paragraph 15(b) provides the landlord with a remedy in the event of termination for non-payment, Paragraph 6 protects CMCC from incurring additional legal fees, made more likely due to the risk inherent in reinstating the Lease. Unlike Paragraph 15(b), Paragraph 6 does not require termination of the Lease. Instead, its liquidated damages provision is triggered when CMCC is forced to resort to legal process. Additionally, the smaller amount of damages provided in Paragraph 6 does not come close to serving the make-whole purpose of Paragraph 15(b). Finally, Paragraph 6 of the Reinstatement Agreement neither purports to replace the damages under Paragraph 15(b), nor references the provision at all. Because each provision serves a distinct purpose, has a distinct trigger, and there is no basis in the text of either agreement providing otherwise, the Court concludes that Paragraph 6 supplements, rather than supplants, Paragraph 15(b). Accordingly, the

Court finds that CMCC continues to be more likely than not to recover judgment, including interest and costs, in an amount equal to or greater than $723,724.64, and grants its motion for additional attachment and attachment on trustee process.

**CONCLUSION**

The Court concludes that Protocall waived the arguments it now marshals in opposition to the motion. Even if Protocall did not waive its arguments, the outcome is no different. The Court determines that there has been no change to the underlying basis of the Original Attachment Order, and that Paragraph 6 of the Reinstatement Agreement supplements the liquidated damages provision found at Paragraph 15(b) of the Lease. For these reasons, CMCC is still more likely than not to recover judgment, including interest and costs, in an amount equal to or greater than $723,724.64. Thus, CMCC's motion for additional attachment and attachment on trustee process is granted.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

So Ordered.

Dated:   January 21, 2021                                                  /s
                                                      Michael A. Duddy, Judge
                                                      Business and Consumer Court

CENTRAL MAINE COMMERCE CENTER, LP

v.

PROTOCALL CONTACT SERVICES, INC

Party Name:                                          Attorney Name:


*Central Maine Commerce Center*          **Eamonn Hart, Esq.**
Brann Isaacson
184 Main Street
Lewiston, ME 04243


*Protocall Contact Services, Inc.*          **David Johnson, Esq.**
Marcus Clegg
16 Middle St.
Portland, ME 04101