MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:      2017 ME 42
Docket:        Ken-16-233
Submitted
  On Briefs:   February 10, 2017
Decided:       March 9, 2017

Panel:         ALEXANDER, MEAD, <u>GORMAN</u>, HJELM, and HUMPHREY, JJ.

DAVID BORDETSKY

v.

JAK REALTY TRUST

GORMAN, J.

[¶1]  David Bordetsky appeals from a judgment in favor of JAK Realty Trust entered in the Superior Court (Kennebec County, *Mullen, J.*) after a nonjury trial on Bordetsky's foreclosure complaint.  Bordetsky argues that the court erred by applying the requirements for a notice of default and right to cure contained in 14 M.R.S. § 6111 (2012)[1] to his attempt to foreclose.  We agree and vacate the judgment.

I.  BACKGROUND

[¶2]  On October 3, 2013, Bordetsky filed a complaint for foreclosure against the Trust, alleging that on April 13, 2009, Gregory O'Halloran—as

---

[1]  Title 14 M.R.S. § 6111 has since been amended, but not in any way that affects this appeal. *See* P.L. 2015, ch. 36, §§ 1-2 (effective Oct. 15, 2015) (codified at 14 M.R.S. § 6111 (2016)).

trustee of the Trust—executed a promissory note in the amount of $140,000, secured by a mortgage on property located in Benton; that the Trust had defaulted on the note as of August 13, 2011; and that the total amount due on the note, including principal, interest, and late charges, was $193,625.42.[2]

[¶3]  After a nonjury trial, the court issued a judgment dated April 15, 2016, containing the following findings of fact, which are supported by competent record evidence.  O'Halloran is trustee of the JAK Realty Trust; the Trust's beneficiaries are O'Halloran's four daughters.  On April 13, 2009, the Trust—through O'Halloran, as trustee—executed a document entitled "COMMERCIAL NOTE" in the amount of $140,000 in favor of Bordetsky.  The note states that it is secured by a mortgage on real estate located at 157 Wyman Road in Benton, and lists the same address as the "Borrower's Address."  157 Wyman Road, Benton, is O'Halloran's address.  The note also states, "This note evidences a loan for business and commercial purposes and not for personal, household, or family purposes."

---

[2]  The complaint named "Gregory O'Halloran, Trustee of JAK Realty Trust" as the defendant and O'Halloran individually as a party-in-interest.  By amended complaint, Bordetsky also named, as parties-in-interest, the United States, based on a federal tax lien on the property; the State, based on a state tax lien; and NETCO Inc., based on a writ of execution on the property.  The United States, the State, and NETCO all answered the complaint, each acknowledging its interest in the property. Additional parties were later joined—the Jerome Lipman Revocable Trust and Robert Larochelle as plaintiffs, and Jessica O'Halloran Smart as a party-in-interest.  None of these persons or entities is a party to the appeal.

[¶4]   On the same day, the Trust executed a mortgage in favor of Bordetsky on real property at 157 Wyman Road in Benton.  The mortgage mentions no commercial purposes, and states only that the mortgage is to secure payment "in accordance with the terms of a certain promissory note of even date."

[¶5]   The court determined that "the language of the agreement between the parties was ambiguous" as to whether it was residential or commercial in nature, and therefore considered extrinsic evidence—O'Halloran's testimony in particular—regarding the parties' intent in executing the note and mortgage.  Based on O'Halloran's testimony, the court further found that, at the time the note and mortgage were executed, Bordetsky knew that O'Halloran and his children were residing at the Wyman Road property.  O'Halloran has continued to reside there.  Of the $140,000 loaned to the Trust, $67,421.68 was used to purchase the "Beckris, LLC loan," a "business involvement" in which the Trust was purchasing a different note and mortgage from Bordetsky.  Most of the remaining loan proceeds—$61,491.89—were used to pay O'Halloran as trustee; of that amount, O'Halloran used roughly $30,000 to $40,000 to fix up the Wyman Road property, and the remainder was used for O'Halloran's living expenses,

4

including food, utilities, and clothing. Bordetsky was aware when the note and mortgage were executed that O'Halloran intended to use the loan proceeds for both commercial and household purposes. On these facts, the court concluded that Bordetsky was required to—but did not— comply with the requirements for a notice of default and right to cure contained in 14 M.R.S. § 6111, and issued a judgment in favor of the Trust. Bordetsky timely appeals.

## II. DISCUSSION

[¶6] A party seeking to foreclose a mortgage on a residential property pursuant to 14 M.R.S. § 6111 must first comply with certain notice requirements.[3] More particularly, "[a] mortgagee may not accelerate maturity

---

[3] Title 14 M.R.S. § 6111 (2012) provides as follows:

**§ 6111. Notice of mortgagor's right to cure**

**1. Notice; payment.** With respect to mortgages upon residential property located in this State when the mortgagor is occupying all or a portion of the property as the mortgagor's primary residence and the mortgage secures a loan for personal, family or household use, the mortgagee may not accelerate maturity of the unpaid balance of the obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any required payment, tax payment or insurance premium payment, by any method authorized by this chapter until at least 35 days after the date that written notice pursuant to subsection 1-A is given by the mortgagee to the mortgagor and any cosigner against whom the mortgagee is enforcing the obligation secured by the mortgage at the last known addresses of the mortgagor and any cosigner that the mortgagor has the right to cure the default by full payment of all amounts that are due without acceleration, including reasonable interest and late charges specified in the mortgage or note as well as reasonable attorney's fees. If the mortgagor tenders payment of the amounts before the date specified in the notice, the mortgagor is restored to all rights under the mortgage deed as though the default had not occurred.

**1-A. Contents of notice.** A mortgagee shall include in the written notice under subsection 1 the following:

**A.** The mortgagor's right to cure the default as provided in subsection 1;

**B.** An itemization of all past due amounts causing the loan to be in default;

**C.** An itemization of any other charges that must be paid in order to cure the default;

**D.** A statement that the mortgagor may have options available other than foreclosure, that the mortgagor may discuss available options with the mortgagee, the mortgage servicer or a counselor approved by the United States Department of Housing and Urban Development and that the mortgagor is encouraged to explore available options prior to the end of the right-to-cure period;

**E.** The address, telephone number and other contact information for persons having authority to modify a mortgage loan with the mortgagor to avoid foreclosure, including, but not limited to, the mortgagee, the mortgage servicer and an agent of the mortgagee;

**F.** The name, address, telephone number and other contact information for all counseling agencies approved by the United States Department of Housing and Urban Development operating to assist mortgagors in the State to avoid foreclosure; and

**G.** Where mediation is available as set forth in section 6321-A, a statement that a mortgagor may request mediation to explore options for avoiding foreclosure judgment.

**2. Repealed.**

**3. Notice procedure.** A mortgagee shall provide notice to a mortgagor and any cosigner under this section to the last known addresses of the mortgagor and cosigner by:

**A.** Certified mail, return receipt requested. For the purposes of this paragraph, the time when the notice is given to the mortgagor or cosigner is the date the mortgagor or cosigner signs the receipt or, if the notice is undeliverable, the date the post office last attempts to deliver it; or

**B.** Ordinary first class mail, postage prepaid. For the purposes of this paragraph, the time when the notice is given to the mortgagor or cosigner is the date when the mortgagor or cosigner receives that notice. A post office

6

of the unpaid balance of [an] obligation or otherwise enforce [a] mortgage because of a default" unless and until a notice of default and right to cure has been provided to the mortgagor.  14 M.R.S. § 6111(1); *see Bank of Am., N.A. v.*

---

department certificate of mailing to the mortgagor or cosigner is conclusive proof of receipt on the 3rd calendar day after mailing.

**3-A. Information; Bureau of Consumer Credit Protection.**  Within 3 days of providing written notice to the mortgagor as required by subsections 1 and 1-A, the mortgagee shall file with the Department of Professional and Financial Regulation, Bureau of Consumer Credit Protection, in electronic format as designated by the Bureau of Consumer Credit Protection, information including:

**A.** The name and address of the mortgagor and the date the written notice required by subsections 1 and 1-A was mailed to the mortgagor and the address to which the notice was sent;

**B.** The address, telephone number and other contact information for persons having authority to modify a mortgage loan with the mortgagor to avoid foreclosure, including, but not limited to, the mortgagee, the mortgage servicer and an agent of the mortgagee; and

**C.** Other information, as permitted by state and federal law, requested of the mortgagor by the Bureau of Consumer Credit Protection.

**3-B. Report.**  On a quarterly basis, the Department of Professional and Financial Regulation, Bureau of Consumer Credit Protection shall report to the joint standing committee of the Legislature having jurisdiction over insurance and financial services matters on the number of notices received pursuant to subsection 3-A.  To the extent information is available, the report must also include information on the number of foreclosure filings based on data collected from the court and the Department of Professional and Financial Regulation, Bureau of Financial Institutions and on the types of lenders that are filing foreclosures.

**4.  Repealed.**

**4-A. Letter to mortgagor.**  Within 3 days of receiving electronic information from the mortgagee as set forth in subsection 3-A, the Department of Professional and Financial Regulation, Bureau of Consumer Credit Protection shall send a written notice to the mortgagor that includes a summary of the mortgagor's rights and available resources, including information concerning the foreclosure mediation program as established in section 6321-A.

**5.  Repealed.**

*Greenleaf*, 2014 ME 89, ¶¶ 18, 29, 96 A.3d 700 (requiring, as an element of a foreclosure, "evidence of [a] properly served notice of default and mortgagor's right to cure" in compliance with 14 M.R.S. § 6111 (quotation marks omitted)); *Chase Home Fin. LLC v. Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508 (same).

[¶7]  Not all attempts to foreclose are subject to section 6111, however; pursuant to 14 M.R.S. § 6111(1), only "[w]ith respect to mortgages upon residential property located in this State when the mortgagor is occupying all or a portion of the property as the mortgagor's primary residence and the mortgage secures a loan for personal, family or household use" must a mortgagee satisfy the requirements for a notice of default and right to cure contained in 14 M.R.S. § 6111.  In short, section 6111(1) applies when three discrete facts are true: (1) the mortgage is on residential property in Maine; (2) the mortgagor occupies the property as his primary residence; and (3) the mortgage secures a loan for personal, family, or household use.  Thus, the first two facts regard the nature and use of the property that is the subject of the mortgage, and the third fact regards the nature of the loan that the mortgage secures.

[¶8] The court's decision here rests entirely on its determination that the notice requirements of section 6111 applied to Bordetsky's foreclosure action and that Bordetsky failed to meet his burden of establishing that those requirements were satisfied. There is no dispute—and Bordetsky stipulated—that he, as mortgagee, did not comply with section 6111. Bordetsky challenges the court's determination that section 6111 applies to this foreclosure.

[¶9] As to the first two requirements, the court found that the mortgage is on real property located at 157 Wyman Road in Benton, Maine; O'Halloran "has been residing at the subject property" at least since 2009; and O'Halloran's four daughters also resided there as well. These findings are supported by O'Halloran's testimony and indeed, Bordetsky has never challenged that a residential home is situated on the Wyman Road property. The crux of the appeal is the trial court's determination as to the third requirement—that the mortgage "secures a loan for personal, family or household use." 14 M.R.S. § 6111(1).

[¶10] Because the note is the document that memorializes the loan, *see Harbor Funding Corp. v. Kavanagh*, 666 A.2d 498, 499 (Me. 1995), the court must interpret the note to determine whether a loan is for "personal, family or

household use," 14 M.R.S. § 6111(1). If the note is unambiguous, the court interprets it according to the language within "the four corners of the instrument without resort to extrinsic evidence." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (quotation marks omitted); *see Coastal Ventures v. Alsham Plaza, LLC*, 2010 ME 63, ¶ 26, 1 A.3d 416 (stating that "a contract is to be interpreted to give effect to the intention of the parties as reflected in the written instrument" (quotation marks omitted)). If the trial court determines that the note is ambiguous, that is, "reasonably susceptible to more than one interpretation" it may consider extrinsic evidence of the parties' intent in executing it. *Coastal Ventures*, 2010 ME 63, ¶ 27, 1 A.3d 416 (quotation marks omitted).

[¶11]   We review de novo both the trial court's determination of whether a note is ambiguous or unambiguous, and its interpretation of an unambiguous note. *Thurston v. Galvin*, 2014 ME 76, ¶ 11, 94 A.3d 16; *Coastal Ventures*, 2010 ME 63, ¶ 30, 1 A.3d 416. The trial court's factual findings regarding the intent of the parties in executing an ambiguous note are reviewed for clear error. *Coastal Ventures*, 2010 ME 63, ¶¶ 28, 31, 1 A.3d 416.

[¶12]   Here, the court found that the note is entitled "COMMERCIAL NOTE" and that it states that it "evidences a loan for business and commercial

purposes and not for personal, household, or family purposes." The court determined, however, that "the language of the agreement between the parties was ambiguous with respect to the existence and scope of integration" as between the note and the mortgage because although the note purported to be commercial in nature, the mortgage was silent as to any commercial purpose. On this basis, the court considered extrinsic evidence of O'Halloran's intended use of the loan proceeds and Bordetsky's knowledge of those intended uses.

[¶13] Pursuant to the third requirement set forth in section 6111(1), the court's task was to consider the nature of the *loan*. The nature of the loan is explained by the note alone, and the note unambiguously states that the loan was "not for personal, household, or family purposes." Given the lack of any ambiguity in the note, we conclude that the court erred when it considered extrinsic evidence of the parties' intent in executing the note or any other instrument. The loan was unambiguously not "for personal, family or household use" within the meaning of section 6111(1), and therefore the requirements for a notice of default and right to cure contained in section 6111 did not apply to Bordetsky's foreclosure action against the Trust. We vacate the court's entry of a judgment in favor of the Trust and remand the

matter for the court to consider the evidence already presented at the first trial in determining whether Bordetsky is entitled to judgment.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

Adam J. Shub, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellant David Bordetsky

Mark A. Kearns, Esq., and Mark L. Randall, Esq., Portland, for appellee JAK Realty Trust

Kennebec County Superior Court docket number RE-2013-62
FOR CLERK REFERENCE ONLY