STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        DOCKET NO. CV-19-175


DEVGRU FINANCIAL, LLC,

          Plaintiff

     v.                                         FINAL DECISION AND ORDER

LADO LADOKA,

          Defendant

     The matter before the court is Plaintiff Devgru Financial, LLC's, ("Devgru") motion for

partial summary judgment. Devgru moves for summary judgment on the first count of its

complaint and on Defendant Lado Ladoka's ("Ladoka") counterclaims. For the following

reasons, the motion is granted.

Factual Background

     On or about December 7, 2004, Ladoka purchased a three-unit apartment building located

at 3 Horton Place, Portland, Maine. (Supp.'g S.M.F. ¶¶ 1-2.) Ladoka applied for a pair of loans

from Fieldstone Mortgage Company to finance the purchase of this property. (Supp.'g S.M.F. ¶

10.) The first loan was for $208,000 and the second was for $26,000. (Supp.'g S.M.F. ¶ 10.)

Both loan applications required him to choose whether the loan proceeds were being used to

purchase a primary residence, a secondary residence, or an investment. (Supp.'g S.M.F. ¶¶ 13-

15.) They also required him to disclose if he intended to occupy the property as his primary

residence. *Id.* On both forms he selected investment for the former and wrote "no" for the latter.[1]

*Id.*

---

[1] Ladoka neither admits or denies paragraphs 13-15 of Devgru's Statement of Material Facts. Instead, he
qualifies these statements, adding that while his subjective intention at the time of the application was to

Ladoka executed and delivered promissory notes to Fieldstone Mortgage Company with respect to these loans. (Supp.'g S.M.F. ¶ 17.) The second note, the one at issue in this matter, provided a set yearly interest rate of 8.99%. (Supp.'g S.M.F. ¶ 19.) The note further states that if the note's holder does not receive the full amount of a monthly payment within 15 calendar days of the due date, there would be a $10 late fee assessed. (Supp.'g S.M.F. ¶ 20.) The note further provides that the holder may collect costs and reasonable attorney's fees if the note's provisions are enforced. (Supp.'g S.M.F. ¶ 21.)

Ladoka paid his obligations under the note in full from February 1, 2005, to June 1, 2007. (Def.'s Resp. to Pl.'s Req. Admis. ¶ 6.) Ladoka has made no payments since then. (Def.'s Resp. to Pl.'s Req. Admis. ¶ 7.) (Opp. S.M.F. ¶ 53.) The note is indorsed in blank, and Devgru is in possession of the original². (Supp.'g S.M.F. ¶ 22.) Ladoka has acknowledged that the note submitted by Devgru is a true and accurate copy of the note and has admitted the interest rate, the monthly payment amount and the total principal. (Def.'s Resp. to Pl.'s Req. Admis. ¶¶ 1-3.)

Procedural Background

Devgru filed its complaint on April 19, 2019. Ladoka answered and alleged counterclaims on May 14, 2019. The instant motion was filed July 8, 2020, after the close of the discovery period.

---

live in one of the units on the property, he was unable to indicate this on the application due to the fact that all of the units were occupied at the time. (Def.'s Resp. S.M.F. ¶¶ 13-15.) He buttresses this qualification by stating that he did, in fact, move into one of these units with his family. *Id.* Statements of fact are deemed admitted unless properly controverted. M.R. Civ. P. 56(h)(4). Ladoka does not controvert Devgru's S.M.F. ¶¶ 13-15, as these paragraphs simply describe the fields on the loan application and how Ladoka filled them, not his subjective intent or plans for the future. Thus, he has admitted these facts.

Ladoka also objects to the admissibility of this statement, on the grounds that it is inadmissible hearsay and lacking foundation. The court addresses this objection in its analysis and rejects it. For the sake of coherence, the court draws on these documents in its factual summary before explicitly analyzing the issue.

² Ladoka neither admitted nor denied this statement of material fact; see M.R.Civ.P.56(h)(4).

2

Standard

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). In order to controvert an opposing party's factual statement, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2). Assertion of material facts must be supported by record references to evidence that is of a quality that would be admissible at trial." *HSBC Mortg. Servs. v. Murphy*, 2011 ME 59, ¶ 9, 19 A.3d 815.

Breach of Contract

Devgru claims that it is entitled to summary judgment on Ladoka's breach of the note. Devgru has produced the promissory note at issue, signed by Ladoka and indorsed in blank. There are no disputes as to the authenticity of the note or Ladoka's signature. Promissory notes indorsed in blank are payable to the bearer and negotiable by possession alone. 11 M.R.S. § 3-1205(2).

Introducing a promissory note into evidence is sufficient to establish that the party introducing it is in possession of the note. *Deutsche Bank Nat'l Trust Co. v. Wilk*, 2013 ME 79, ¶ 10, 76 A.3d 363. Here, Devgru has produced the note as an exhibit to its motion, and Ladoka does not contest its authenticity. (Pl.'s Ex. A.) Ladoka acknowledges that he stopped making

3

payments on the note after June 1, 2007. (Def.'s Resp. to Pl.'s Req. Admis. ¶¶ 6.) The terms of the note obligate Ladoka to pay $263.56 per month. (Pl.'s Ex. A.) The outstanding balance became due on January 1, 2020. *Id.* There is no material fact in dispute as to whether Ladoka breached the terms of the note by ceasing payment.

The next issue is the amount owed. Devgru submitted documentation of the balance on this loan as an exhibit to the Affidavit of Herbert Dorn. (Dorn Aff. ¶ 17.; Dorn Aff. Ex. B.) Ladoka denies that these records reflect the amount due. (Def.'s Resp. S.M.F. ¶¶ 26.) He cites to his affidavit to support his denial. *Id.* In the cited paragraphs, Ladoka states that it has been more than six years since action has been taken on the debt, and states generally that the facts cited in the affidavit show that he owes nothing on the outstanding debt. (Ladoka Aff. ¶¶ 51-53.) The six year time frame is relevant to his counterclaims, and will be addressed there. As for the rest of his affidavit, the court finds no facts therein that would constitute a proper denial of Devgru's assertion. In fact, Ladoka has already admitted facts which corroborate Devgru's records. He admitted the terms of the note, admitted that he made regular payments in conformance with those terms starting February 1, 2005 and made his final payment on June 1, 2007. (Def.'s Resp. to Pl.'s Req. Admis. ¶¶ 1-3, 6-7.) The note at issue has a fixed yearly interest rate of 8.99% and monthly late fee of $10. (Pl.'s Ex. A.) These admissions are consistent with the records Devgru submitted. The documentation submitted by Devgru shows the amount owed as of July 6, 2020 is $53,313.21, broken down with principal of $23,781.45, accrued interest of $28,021.76, and late charges of $1,510.00.[3] (Supp.'g S.M.F. ¶ 26; Dorn Aff. ¶17; Dorn Aff. Ex. B.) Thus, Ladoka's only proper denial pertains to his consumer law counterclaims.

---

[3] See the analysis *infra* to the admissibility of business records pursuant to M.R.Evid. 803(6) and *Bank of New York Mellon v. Shone,* 2020 ME 122. Ladoka denies paragraph 26 of Devgru's Statement of Material Facts, but he references only paragraphs 51, 52 and 53 of his affidavit which do not challenge the actual amount owed but rather cite facts pertinent to his consumer law counterclaims

4

While Ladoka does not raise the issue himself, the court must also analyze the admissibility of the records relied on by Devgru. The record evidence supporting Devgru's summary judgment motion come primarily from an affidavit and supporting documents submitted by Herbert Dorn, a manager for Devgru. These documents are sufficient to ground Devgru's statement of material facts if they fall within the Business Record Exception to the hearsay rule. Business records are admissible pursuant to M.R. Evid. 803(6) if:

(A) The record was made at or near the time by —or from information transmitted by— someone with knowledge;

(B) The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11), Rule 902(12) or with a statute permitting certification; and

(D) Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

*KeyBank Nat'l Ass'n v. Estate of Quint*, 2017 ME 237, ¶14, 176 A.3d 717.

These business records include integrated business records, which are records created by one entity and later integrated into records of a second, separate entity. Integrated business

5

records are subject to the same admissibility requirements of M.R. Evid. 803(b). *Bank of New York Mellon v. Shone*, 2020 ME 122, ¶ 8, n.4, ___ A.3d ___. And an affiant or witness whose statements are offered to establish the admissibility of a business record need not be an employee of the record's creator; an employee of a receiving business may be qualified if the records were received and integrated into another business's records and were relied upon in that business's day-to-day operations. *Ne. Bank & Trust Co. v. Soley*, 481 A.2d 1123, 1127 (Me. 1984); see also *Bank of New York Mellon v. Shone*, 2020 ME 122, , ___ A.3d ___. Testimony by a witness with personal knowledge of the creating business is not required if the business that received the record can meet the integration, verification, and reliance criteria of the integrated records approach. *Id.* at ¶ 27. Verification requires simply that the business receiving a record establish or confirm the accuracy of the record in some way. *Id.*, ¶ 10. This may include checking the record for accuracy before integration, or integrating and using the record in the course of its own operations in a manner that confirms the accuracy of the record. *Id.*

Dorn's affidavit attests that the loan file at issue in this case incorporates records from Fieldstone Mortgage Company and First Horizon Home Loan Corporation, the originator and previous servicer of this loan. (Dorn Aff. ¶¶ 2-4.) Thus, these records are partially subject to an integrated records analysis under *Soley* and *Shone*.

For the integration criterion, Dorn states "DEVGRU Financial, LLC manually and electronically integrated Fieldstone Mortgage Company's records into its own records for this loan." (Dorn Aff. ¶ 8.) He also states "Fieldstone Mortgage Company's business records regarding this loan are in fact incorporated into DEVGRU Financial, LLC's own business records." (Dorn Aff. ¶ 9.) These statements establish that the records were integrated.

6

As for verification, Dorn states that Devgru "conducted an extensive boarding and auditing process prior to accepting records from Fieldstone Mortgage Company in this matter." (Dorn Aff. ¶ 5.) He also states that "the accuracy of Fieldstone Mortgage Company's records of this loan [were] independently confirmed by DEVGRU Financial, LLC." (Dorn Aff. ¶ 7.) These statements establish that Devgru took steps to confirm the accuracy of the records. Therefore, the verification criterion is satisfied.

Finally, the reliance criterion. Dorn states that Devgru "relies upon Fieldstone Mortgage Company's business records for the regular, day-to-day operations of its business" and "for the regular, day-to-day servicing of this loan." (Dorn Aff. ¶¶ 10-11.) This establishes reliance.

Because all three criteria are established, the records incorporated from Fieldstone are admissible under the Business Record Exception.

As for the records reflected in the loan documents created by Devgru itself, Dorn attests that the records are made by persons in the data entry department at or near the time any payment is made by a debtor. (Dorn Aff. ¶ 2.) He also states that these records are generated in the ordinary course of Devgru's regularly conducted business activity, which he identifies as "processing payments." *Id.* Dorn's affidavit establishes his qualifications, as he states that he is a manager who oversees the payment records to make determinations about the status of debtors' payments. *Id.* Nothing in the record here indicates a lack of trustworthiness. The records therefore satisfy all four elements of the Business Record Exception and are admissible.

Devgru's statements of fact establishing Ladoka's liability on the note are supported by documentation admissible under the Business Record Exception. The only remaining issues of material fact pertaining to Count I of Devgru's complaint, therefore, are Ladoka's claims under the Maine and Federal Fair Debt Collection Practices Acts.

7

Counterclaims

Ladoka claims that Devgru's practices leading up to and during this lawsuit violate the Maine and Federal Fair Debt Collection Practices Acts (FDCPA) and the Maine Consumer Credit code (MCCC), 9-A M.R.S. § 1-101 *et. seq.* (2020). Devgru defends these claims primarily by arguing that these statutes do not apply to the debt at issue, because it is not a consumer debt.

All three statutes apply only to consumer debt, defined as debts incurred "primarily for personal, family, or household purposes." 9-A M.R.S. § 1-301(14)(A)(2) (2020); 32 M.R.S. § 11002(5) (2020); 15 USC § 1692a(5). The relevant question is not the subjective intent of the debtor, but the purpose of the loan itself. *Bordetsky v. JAK Realty Trust*, 2017 ME 42, ¶ 13, __ A.3d __. Where the promissory note is explicit as to its purpose, the inquiry ends there. *Id.*

Ladoka argues that the note unambiguously evidences a consumer loan because it does not explicitly state that it is commercial. (Def.'s Opp'n to Def.'s Mot. Summ. J. 8.) He cites *Bordetsky* to support this argument, but that is not the proper interpretation of that case. *Bordetsky* only states that where a note unambiguously evidences a commercial loan by its own terms, a court may not look to extrinsic evidence to determine whether it actually evidences a consumer loan. *Bordetsky*, 2017 ME 42, ¶ 13, __ A.3d __. This holding cannot be read to mean that the absence of language in the note evidencing a commercial loan requires the court to find that the note actually evidences a consumer debt. This would be tantamount to saying that all loans default to consumer loans, unless they specify otherwise.

The note does not specify whether it is for commercial purposes or for personal, family, or household purposes. Thus, the note is "reasonably susceptible to more than one interpretation" and this court must consider extrinsic evidence of the parties' intent in executing it. *Coastal Ventures v. Alsham Plaza, LLC*, 2010 ME ¶ 27, 1 A.3d 416. The issue on summary judgment,

8

then, is whether the parties have introduced record evidence sufficient to generate a genuine issue of material fact as to the parties' intent in executing the note.

Devgru has produced a loan application signed by Ladoka when he was seeking the loan at issue in this case. Ladoka objects to the admissibility of this application on the grounds that it is "hearsay . . . without adequate foundation" asserted by Dorn, whose affidavit Devgru cites to in these paragraphs. (Def.'s Resp. S.M.F. ¶¶ 13-15.) Once again, the loan applications that Dorn refers to in his affidavit would be admissible if they fall within the Business Record Exception. Dorn states in his affidavit: "it is the regular practice of our business activity to maintain in our records the documents that pertain to the origination of the subject loan transaction, that is to say those documents relating to the loan application and loan closing process." (Dorn Aff. ¶ 2.) Thus, these records are subject to the same integrated records analysis conducted previously. The court sees no reason to duplicate that analysis here, as it is identical in every respect. These loan applications are admissible under the Business Record Exception. Additionally, because Ladoka does not challenge the authenticity of the signature or deny that these are accurate copies of applications that he filled out and signed, the application is admissible as a statement by a party opponent and is not hearsay. M.R. Evid. 801(2).

The application has a field where the applicant must specify whether the property he plans to purchase with the loan funds will be a primary residence, a secondary residence, or an investment. (Pl.'s Ex. G.) "Investment" is marked. *Id.* Under the field that asks whether the property will be his primary residence, he answered "No." *Id.* This evidence speaks to the purpose of the loan and supports Devgru's interpretation that it was commercial.

Ladoka attempts to generate an issue of material fact as to the purpose of the loan by claiming that it is "uncontroverted" that he sought out the loan to purchase a property that he

9

intended to move his family into. (Def.'s Opp'n to Pl.'s Mot. Summ. J. 7.) The record citations Ladoka relies on to support this claim come from his own affidavit. In the relevant portion, he claims that he had a subjective desire or plan to move his family into the property and points to the fact that he "ultimately" moved in to a unit in the property and that members of his family still live there as evidence that the loan was for "personal, family, or household purposes." (Ladoka Aff. ¶¶ 31-35, 39-42.) What he does not say, however, is that this plan was communicated to any other person or that his plan would have been apparent prior to the origination of the loan. Even given the generous interpretation his affidavit is due at the summary judgment stage, his affidavit only speaks to his own intent in acquiring the property, not the mutual intent of the parties and the purpose of the loan when the note was executed. In other words, it may speak to Ladoka's *own* purpose in acquiring the loan, but it does not speak to the purpose of the loan itself.

There is no genuine issue of material fact here. The competent evidence in the record indicates only that Ladoka applied for a loan for investment purposes and nothing indicates that the loan was contemplated as being "for personal, family, or household purposes." Thus, the consumer protection statutes Ladoka brings his counterclaim under do not apply to the debt at issue and his counterclaims fail, removing the final issue of material fact on Count I of Devgru's complaint. Accordingly, Devgru will be granted summary judgment on that claim.

The records Devgru submitted in support of its summary judgment motion prove a balance of $53,313.21 as of July 6, 2020. The terms of the note provide for the collection of attorney's fees and costs as allowed by law. (Dorn Aff. Ex. A.) Accordingly, judgment will be granted on Count I in the amount $53,313.21, plus fees and costs as allowed. Counts II and III are plead in the alternative, and are therefore moot.

10

The entry is

> Plaintiff DEVGRU FINANCIAL, LLC'S, Motion for Summary Judgment on Count I and all Counterclaims is GRANTED; Judgment is awarded to the Plaintiff Devgru Financial, LLC and against the Defendant Lado Ladoka in the amount of $53,313.21, plus attorney's fees and costs as allowed.

> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: _November 9th, 2020_

_____
Harold Stewart, II
Justice, Superior Court

11