MAINE SUPREME JUDICIAL COURT          Reporter of Decisions
Decision:      2024 ME 17
Docket:        BCD-23-56
Argued:        September 12, 2023
Decided:       February 29, 2024

Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, and DOUGLAS, JJ.*

FRANKLIN SAVINGS BANK

v.

MICHAEL T. BORDICK et al.

CONNORS, J.

[¶1]  This appeal involves the construction of two provisions of the Federal Truth in Lending Act (TILA): (1) 15 U.S.C.A. § 1603(1), which exempts from TILA disclosure requirements "[c]redit transactions involving extensions of credit primarily for business [or] commercial . . . purposes," and (2) 15 U.S.C.A. § 1603(3), which exempts "[c]redit transactions, other than those in which a security interest is or will be acquired in real property, or in personal property used or expected to be used as the principal dwelling of the consumer . . . in which the total amount financed exceeds $50,000."  15 U.S.C.A. §§ 1601-1667f (Westlaw through Pub. L. No. 118-22).

---

*  Although Justice Jabar participated in this appeal, he retired before this opinion was certified.

2

[¶2]  Michael T. Bordick and Monica P. Bordick defaulted on a loan from Franklin Savings Bank secured with a hunting cabin that they owned on property they leased.  The Bank filed a complaint for recovery of personal property (the cabin), and the Business and Consumer Docket (BCD) (*Duddy, J.*) ruled in favor of the Bank.  The Bordicks now appeal from that judgment, pursuing the affirmative defense that the Bank did not make disclosures required by TILA.[1]  The Bank concedes that it did not make TILA disclosures, but counters that the credit transaction is not subject to TILA.[2]

[¶3]  We conclude that a credit transaction secured by real property in the form of a lease is not exempt from TILA under 15 U.S.C.A. § 1603(3), but that the BCD applied an incorrect test to determine whether the loan was for commercial purposes and therefore exempt under § 1603(1).  We therefore vacate the judgment in favor of the Bank and remand for the BCD to determine the nature of the loan, looking at the totality of the circumstances.

---

[1]  Violation of TILA would also violate the Maine Consumer Credit Code - Truth-in-Lending, 9-A M.R.S. § 8-504(1) (2023) (requiring creditors to comply with TILA).

[2]  The Bordicks also argue that even if the Bank were entitled to judgment, the BCD erred as a matter of law in compelling the Bordicks to allow the Bank to enter the Bordicks' leased property through issuance of a writ of possession.  Given our ruling, we need not and do not address this question.

# I. BACKGROUND

[¶4]  The Bordicks entered into a loan with the Bank for $378,698.55. The loan was secured by both personal property (the Bordicks' hunting cabin) and real property (a lease for the land on which they had built the cabin).  When the Bordicks failed to make their payments, the Bank declared a default and filed a complaint for recovery of personal property pursuant to 14 M.R.S. § 7071 (2023) in Rumford District Court, seeking possession of the cabin.

[¶5]  The matter was transferred to the BCD, and the BCD held a summary proceeding per section 7071 on January 17, 2023.

[¶6]  During the hearing, the Bordicks asserted the affirmative defense that the Bank did not make disclosures required by TILA.  *See Hartford Nat'l Bank & Trust Co. v. Harvey*, 420 A.2d 230, 236-37 (Me. 1980) (holding that claim of a right to statutory penalties for a violation of TILA disclosure requirements in an amount sufficient to offset the default amount may be raised as an affirmative defense in the predecessor statute to section 7071).

[¶7]  The Bank conceded that it did not make TILA disclosures to the Bordicks but argued that TILA did not apply because the loan was for commercial purposes, citing language in the loan documents labeling the loan commercial.  In response, the Bordicks argued that the label in loan

documentation is not definitive when determining the nature of a loan for TILA disclosure purposes and that, in any event, the purpose provided in the loan documents stated that the proceeds would be used to "refinance" real estate for "the following type of business: N/A." As an offer of proof on the first point, they cited material outside the loan documentation to support their position, including that the loan was a refinancing of a residential consumer debt and that there was no new money lent, just the payment restructure of an earlier loan.

[¶8] The BCD excluded the Bordicks' extrinsic evidence, agreeing with the Bank that the decision in *Bordetsky v. JAK Realty Tr.*, 2007 ME 42, 157 A.3d 233, precluded review of any evidence outside the loan documentation to determine the purpose of the loan. Based on the loan documentation here, the BCD entered judgment in favor of the Bank for possession of the camp, holding that the loan was exempt under section 1603(1). The judgment included an order directing the issuance of a writ of possession and requiring that the Bordicks turn over the camp to the Bank by delivering all keys to the cabin and to the gate on the driveway leading to the cabin and by allowing the Bank unimpeded access to the camp.

[¶9]   The Bordicks timely appealed.   M.R. App. P. 2B(c)(2); 14 M.R.S. § 7071(8).   After briefing[3] and oral argument, we requested supplemental briefing on the question of whether the loan was exempt under 15 U.S.C.A. § 1603(3) (Westlaw current through Pub. L. 118-39).[4]   The parties filed supplemental briefs; the U.S. Consumer Financial Protection Bureau (CFPB) and the State declined to take a position on this issue.

## II.  DISCUSSION

### A.   Under TILA, disclosures are required for some but not all credit transactions.

[¶10]  "The Truth in Lending Act has the broad purpose of promoting the informed use of credit by assuring meaningful disclosure of credit terms to consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980) (quotation marks omitted).

[¶11]  A creditor's failure to comply with TILA can result in civil liability if the consumer brings an action within one year of the violation.  *See* 15 U.S.C.A.

---

[3]  We granted the motion of the U.S. Consumer Financial Protection Bureau (CFPB), the State of Maine Bureau of Financial Institutions, and the Attorney General of the State of Maine to file an amicus brief, which supported the Bordicks' interpretation of 15 U.S.C.A. § 1603(1) (Westlaw through Pub. L. No. 118-39).

[4]  Specifically, we asked, "Does 15 U.S.C.A. § 1603(3) (Westlaw current through P.L. 118-13) exempt the loan at issue here from the operation of the federal Truth in Lending Act, given that the total amount financed exceeded $50,000, the loan was not a private education loan, no security interest in real property was acquired, and the personal property in which a security interest was acquired was not used or expected to be used as the principal dwelling of the borrowers?"

§ 1640(e) (Westlaw current through Pub. L. 118-39). Despite the one-year statute of limitations on affirmative claims by a consumer, a consumer in default can at any time assert a violation of TILA as a defense to any action to collect amounts owed by the consumer to a creditor or by recoupment or setoff. *Id.* § 1640(h), (k).

[¶12] TILA does not apply to all credit transactions. Among others, it does not apply to the following transactions:

> (1) Credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations.
>
> . . . .
>
> (3) Credit transactions, other than those in which a security interest is or will be acquired in real property, or in personal property used or expected to be used as the principal dwelling of the consumer and other than private education loans (as that term is defined in section 1650(a) of this title), in which the total amount financed exceeds $50,000.

15 U.S.C.A. § 1603 (1), (3).

[¶13] As the Supreme Court has noted, credit transactions, given their complexity and variety, "defy exhaustive regulation by a single statute." *Ford Motor Credit Co.*, 444 U.S. at 559 (1980). Congress therefore "delegated broad administrative lawmaking power to the Federal Reserve Board when it framed TILA." *Id.* at 566. In 2010, Congress created the CFPB, which took over

responsibility for the administration of TILA from the Federal Reserve Board (FRB).  *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. \_\_, 140 S. Ct. 2183, 2193 (2020).  By statute, the CFPB is currently charged with carrying out the purposes of TILA and is authorized to impose additional requirements, classifications, and other provisions to facilitate compliance with TILA.  *See* 15 U.S.C.A. § 1604(a) (Westlaw through Pub. L. No. 118-39).  Regulation Z implements this authority.  *See* 12 C.F.R. § 226.1 (2024); *Ford Motor Credit Co.*, 444 U.S. at 560.

[¶14]  The Supreme Court has explained that "considerable respect is due" to the interpretation of a statute by the officers or agency charged with its administration.  *Ford Motor Credit Co.*, 444 U.S. at 566.  The Supreme Court has also noted that this deference is particularly apt under TILA because of the FRB's (now CFPB's) "role in setting the statutory machinery in motion."  *Id.* (quotation marks and alteration omitted).  Thus, the administrative interpretations by the CFPB including official staff memoranda are afforded significant deference.  *See id.* & n.9; *see also* 15 U.S.C.A. § 1640(f) (Westlaw through Pub. L. No. 118-39) (allowing as a defense to a TILA violation a creditor's good faith conformity with "any rule, regulation, or interpretation thereof by the [CFPB]").

[¶15]  In addition to Regulation Z itself, the CFPB has also issued Official Staff Interpretations, directing a creditor to "determine in each case if the transaction is primarily for an exempt purpose."  12 C.F.R. Supp. I to pt. 226—Official Staff Interpretations § 226.3(3)(a)(1) (2023).

**B.    A remand is required because whether a credit transaction is primarily for a business or commercial purpose rather than for a consumer purpose is not determined solely by how the loan is characterized in the loan documentation.**

[¶16]  We review the BCD's exclusion of extrinsic evidence de novo as a question of law.  *Bank of Am., N.A. v. Camire*, 2017 ME 20, ¶ 7, 155 A.3d 416; *cf. Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶ 13, 956 A.2d 104 (stating that whether a contract is integrated for purposes of applying the parol evidence rule is a question of law).

[¶17]  Neither section 1603(1) nor Regulation Z elucidates how to determine whether a credit transaction is primarily for a business or commercial purpose rather than for a consumer purpose. *See* 12 C.F.R. 1026.3(a) (2023).  The Official Staff Interpretations, however, provide the following:

> In determining whether credit to finance an acquisition—such as securities, antiques, or art—is primarily for business or commercial purposes (as opposed to a consumer purpose), the following factors should be considered:

. . . .

    A.  The relationship of the borrower's primary occupation to the acquisition.  The more closely related, the more likely it is to be business purpose.

    B.  The degree to which the borrower will personally manage the acquisition.  The more personal involvement there is, the more likely it is to be business purpose.

    C.  The ratio of income from the acquisition to the total income of the borrower.  The higher the ratio, the more likely it is to be business purpose.

    D.  The size of the transaction.  The larger the transaction, the more likely it is to be business purpose.

    E.  The borrower's statement of purpose for the loan.

12 C.F.R. Supp. I to pt. 226—Official Staff Interpretations § 226.3(3)(a)(3)(i) (2023).

[¶18]  Of the federal courts that have considered this issue, most apply a holistic approach in determining whether the true purpose of a loan is consumer or commercial.  As the Ninth Circuit explained,

> We have found it necessary when classifying a loan to examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended in order to determine whether the transaction was primarily consumer or commercial in nature. In making this determination, we have elevated substance over form, holding that neither the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry.  We must therefore look to the substance of the transaction and the

borrower's purpose in obtaining the loan, rather than the form alone.

*Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (citations, alterations, and quotation marks omitted); *see also Thorns v. Sundance Props.*, 726 F.2d 1417, 1419 (9th Cir. 1984) (listing the five factors in the 1983 Official Staff Interpretations and remanding the matter to the trial court so that it could evaluate whether the loan at issue was covered by TILA); *Westbank v. Maurer*, 658 N.E.2d 1381, 1387-89 (Ill. App. Ct. 1995) (applying the five factors); *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980) ("We must examine the transaction as a whole and the purpose for which the credit was extended in order to determine whether this transaction was primarily consumer or commercial in nature."); *Gallegos v. Stokes*, 593 F.2d 372, 375 (10th Cir. 1979) (same); *Adiel v. Chase Fed. Sav. & Loan Ass'n*, 810 F.2d 1051, 1054 (11th Cir. 1987) (implying that the court looks at the transaction as a whole in determining the purpose of a loan); *Gombosi v. Carteret Mortg. Corp.*, 894 F. Supp. 176, 180 (E.D. Pa. 1995) (same).

[¶19]  As noted above, the BCD relied on our decision in *Bordetsky* in determining that it could not consider extrinsic evidence concerning the purpose of the Bordicks' loan.  *Bordetsky* involved an interpretation of a provision in 14 M.R.S. § 6111 (2023) that requires lenders to provide a notice

of default and opportunity to cure before the lender may foreclose on a loan. The requirement only applies to loans for "personal, family or household use," section 6111(1), and the note in *Bordetsky* stated that the loan was "for business and commercial purposes and not for personal, household, or family purposes." 2017 ME 42, ¶¶ 2-3, 157 A.3d 233 (quotation marks omitted). Because this language was unambiguous, we held that no extrinsic evidence should have been admitted, and the lender therefore did not have to provide notice and an opportunity to cure. *Id.* ¶¶ 10, 13.

[¶20] Here, in contrast to the situation in *Bordetsky*, we are construing a federal statute. In *Moore v. Canal Nat'l Bank*, 409 A.2d 679, 683 (Me. 1979), we stated that great deference should be given to the Official Staff Interpretations under TILA. These interpretations make clear that, in determining whether a loan is for consumer or commercial purposes, a variety of factors should be considered, not just the language within the four corners of the relevant documents. *See infra* ¶ 17, 8-9. Therefore, it was error for the BCD not to go beyond the language of the loan documents and apply the factors set forth in the Official Staff Interpretations.[5] On remand, the BCD should conduct a totality

---

[5] The Bordicks argue that, even if we were to rule that *Bordetsky* applies to their TILA defense, the BCD erred when it found that their loan documents were unambiguous in stating that the loan was for commercial purposes. The Bank disagrees, highlighting that the note "plainly states the loan is primarily for commercial purposes." Given our ruling, we need not address this question.

12

of the circumstances review by considering all relevant evidence and factors in determining whether the Bordicks' loan was for business or commercial purposes.

**C.      The credit transaction is not exempt from TILA under § 1603(3) because it was secured with real property.**

[¶21]  We requested supplemental briefing on the question of whether section 1603(3) exempts the Bordicks' loan from TILA.  The Bordicks argue that section 1603(3) does not exempt this credit transaction from TILA because the loan was secured by a leasehold, which constitutes real property, in addition to the hunting cabin.  The Bank counters that even if the leasehold does constitute real property, this credit transaction is exempt from TILA under section 1603(3) because the leasehold is for property that is not used and is not expected to be used as the Bordicks' principal dwelling.

[¶22]  Section 1603(3) exempts

> Credit transactions, other than those in which a security interest is or will be acquired in real property, or in personal property used or expected to be used as the principal dwelling of the consumer and other than private education loans (as that term is defined in section 1650(a) of this title), in which the total amount financed exceeds $50,000.[6]

---

[6]  Similarly, TILA's implementing regulation, Regulation Z, does not apply to the following:

An extension of credit in which the amount of credit extended exceeds the applicable threshold amount or in which there is an express written commitment to extend credit in excess of the applicable threshold amount, unless the extension of credit is:

[¶23]   Here, the credit transaction is for $378,698.55, well over the $50,000 threshold, and it is not a private education loan.  It is, however, a credit transaction with a security interest in real property.  The Bordicks assigned their 2014 lease for the land on which their cabin was located to the Bank as part of the collateral to secure the loan.  The loan agreement specifies that the Bordicks "assign[], grant[] to Lender, with mortgage covenants as additional security all the right, title and interest in the following (Property): A. Existing or future leases."  "A leasehold is an interest in real property."  *Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 516 (Me. 1996) (quoting 3 Thompson, *Thompson on Real Property*, § 1015 at 7 (1980)).

[¶24]  The question here is whether the language "used or expected to be used as the principal dwelling of the consumer" in section 1603(3) modifies everything that came before it or only "personal property."   The security agreement describes the collateral as a "[c]abin located on Leased land at Burnt Mountain Road, Lower Cupsuptic Township, Me 04970."  The Bordicks concede that this cabin was not their principal dwelling.

---

(A) Secured by any real property, or by personal property used or expected to be used as the principal dwelling of the consumer; or

(B) A private education loan as defined in § 226.46(b)(5)

12 C.F.R. § 226.3(b) (2023).

14

[¶25]  The comma in the statutory text is located after "real property,"
separating that clause from the language regarding personal property.  As a
grammatical principle, therefore, the clause applies only to the noun phrase
"personal property."  *See O'Connor v. Oakhurst Dairy*, 851 F.3d 69, 72, 74-75
(1st Cir. 2017) (interpreting a statute with a missing serial comma by "tak[ing]
account of certain linguistic conventions—canons, as they are often called—
that can help us make sense of a word in the context in which it appears,"
including "grammar").

[¶26]  The statute's legislative history confirms that the principal
dwelling requirement applies only to personal property.  When TILA was first
enacted in 1968, it exempted "[c]redit transactions, other than real property
transactions, in which the total amount to be financed exceeds $25,000."  Truth
in Lending Act of 1968, Pub. L. 90-321, tit. I, § 104(3), 82 Stat. 147.  The Truth
in Lending Simplification Act passed in 1980 and changed this provision to
exempt "[c]redit transactions, other than those in which a security interest is
or will be acquired in real property, or in personal property used or expected
to be used as the principal dwelling of the consumer, in which the total amount
financed exceeds $25,000."  Truth in Lending Simplification and Reform Act of
1980, Pub. L. 96-221, 94 Stat. 132.  A Senate Report accompanying the Truth in

Lending Simplification Act explained the rationale for this change: "the bill excludes from the $25,000 cutoff purchases of mobile homes expected to be used as a principal dwelling. Thus, where mobile homes costing more than $25,000 are purchased to be used as a principal dwelling, the act's disclosure requirements would apply. This change, recommended by the federal reserve board, extends the same protection to buyers of mobile homes as purchasers of traditional residential structures now enjoy." S. Rep. No. 96-368, at 24 (1979), *as reprinted in* 1980 U.S.C.C.A.N. 236, 259.[7] Therefore, the added language regarding personal property is meant to add protection for people who live in mobile homes as their principal dwelling. This rationale makes clear that the principal dwelling requirement was intended to apply only to personal property, such as mobile homes, not to real property.

[¶27] Further, while the case law is sparse, at least one court has interpreted the principal dwelling requirement to apply only to personal property. *See Walls v. JPMorgan Chase Bank, N.A.*, 2012 WL 3096660, at *3 (W.D. Ky. July 30, 2012) ("[A]lthough Chase suggests the 'principal dwelling'

---

[7] The Official Staff Interpretation of Regulation Z contains a similar explanation: "[b]ecause a mobile home can be a dwelling under § 226.2(a)(19), the exemption in § 226.3(b) does not apply to a credit extension secured by a mobile home that is used or expected to be used as the principal dwelling of the consumer." 12 C.F.R. Supp. I to pt. 226—Official Staff Interpretations § 226.3(3)(b)(7) (2023).

16

condition applies to both personal and real property, this interpretation fails as a matter of a plain reading of the statute").[8]

[¶28]   Because the Bordicks' credit transaction with the Bank was secured with real property, it does not matter that the property was not their principal dwelling, and the credit transaction is not exempt from TILA under § 1603(3).

### III.  CONCLUSION

[¶29]   For the foregoing reasons, the credit transaction is not exempt from TILA under § 1603(3), but it may be exempt from TILA under § 1603(1). We vacate the judgment and remand the matter to the BCD to review the totality of the circumstances to determine whether the loan was for commercial purposes under § 1603(1).

The entry is:

> Judgment vacated.  Remanded for further
> proceedings consistent with this opinion.

---

[8] There is confusing language in other case law that appears to the contrary, but these cases relate to sections of TILA not relevant to this case.  *See Antanuos v. First Nat'l Bank of Ariz.*, 508 F. Supp. 2d 466, 470-71 (E.D. Va. 2007) (holding that "TILA applies only to credit transactions secured by real or personal property used or expected to be used as the principal dwelling of the debtor" for the purposes of the right to rescind under 15 U.S.C.A. § 1635(a) (Westlaw through Pub. L. No. 118-39); *Onyeoziri v. Spivok*, 44 A.3d 279, 284-85 (D.C. 2012) (applying *Antanuos* incorrectly and holding that "TILA's plain language makes clear that the statute applies 'only to credit transactions secured by real or personal property used or expected to be used as the principal dwelling of the debtor'" in the context of TILA disclosures (quoting *Antanuos,* 508 F. Supp. 2d at 471)); *see also Laporte v. Wells Fargo Bank, N.A.,* 2009 WL 2146324, at *3 (E.D. Tenn. July 14, 2009) (incorrectly applying § 1603(3) in a rescission case and stating that "TILA specifically exempts credit transactions other than those where the security interest relates to real property to be used as the borrower's principal dwelling").

Daniel L. Rosenthal, Esq. (orally), and Trey R. Milam, Esq., Marcus Clegg, Portland, for appellants Michael T. Bordick and Monica P. Bordick

David R. Dubord, Esq., and Alexander J. Mihalov, Esq. (orally), Skelton Taintor & Abbott, Lewiston, for appellee Franklin Savings Bank

Ryan Cooper, Esq. (orally), Consumer Financial Protection Bureau, Washington, DC; and Darcie N. McElwee, United States Attorney, and Andrew K. Lizotte, Asst. U.S. Atty., United States Attorney's Office, Bangor, for amicus curiae Consumer Financial Protection Bureau

Aaron M. Frey, Attorney General, James M. Bowie, Asst. Atty. Gen., Christina M. Moylan, Asst. Atty. Gen., and Michael T. Devine, Asst. Atty. Gen., Office of the Attorney General, Augusta, for amici curiae Bureau of Financial Institutions and Bureau of Consumer Credit Protection

Business and Consumer Docket docket number CIV-2022-13
FOR CLERK REFERENCE ONLY